Wilson, J.
The purpose of this action, instituted by a taxpayer of the defendant city, is to restrain the city from the issuance of its bonds for the purpose of the construction of a new system *81 of waterworks to be used in supplying tbe city with water. The judicial determination of the questions necessarily involved in the issues presented will also determine the question as to whether or not the city, under existing circumstances as presented by the record, has the power at all to construct a system of waterworks of its own. All of the questions are purely legal, the case having been presented and tried upon an agreed statement of facts. From this statement we gather the following facts which are necessary to a proper understanding of the issues.
In 1888, the defendant, then the town of Grand Junction, authorized in a proper manner one N. J. Krusen, his associates, successors and assigns, to construct, operate and maintain for the term of twenty-one years a system of waterworks in the town, for the supplying of the town and its inhabitants with water for domestic, sanitary and other uses. The terms of the ordinance granting this franchise were in the usual form, providing that the waterworks should be of a certain capacity, that the grantee should have the right to lay his mains, pipes, etc., in the streets ; and also for the purpose of extinguishing fires and flushing gutters and sewers, the city should during the term pay a certain stipulated sum per annum, and- also agreeing to rent fifty double discharge fire hydrants of a certain size, for which a certain stipulated amount of annual rental was to be paid. It was also stipulated that at the expiration of ten years, the city should have the right to purchase the waterworks, its rights and privileges, at an appraised valuation, to be made in a certain manner. Thereafter, Krusen assigned the franchise and contract and all his rights thereunder to the Grand Junction Water Company, which is the present owner, thereof. The works were constructed in accordance with the contract and accepted by the town in September, 1889. In April, 1892, the city council, the town having then become a city, passed a resolution declaring in substance that the franchise had been forfeited, and that the contract between the city and the water company should be and the same was thereby rescinded. *82 In March, 1897, an ordinance of the city was duly passed and adopted entitled in substance, “ An ordinance to authorize the city council to purchase and improve and repair the waterworks plant and system now in operation in said city, and in the event of a failure to purchase, to construct a system of waterworks to be forever owned, managed and operated by the city; and for this purpose to contract an indebtedness by the issuance of bonds of the city in the sum of $65,000.” The ordinance provided that the city council should tender to the water company $35,000 par value of said bonds for the purchase of the waterworks, and in the event of a refusal, the whole of the issue of said bonds, or so much thereof as might be necessary, should be sold and disposed of for the purpose of raising money with which to construct a system of waterworks for the city. The ordinance was duly submitted to the voters of the city who were taxpayers, and at the election was duly approved by a majority of the voters. Following this election, the city council adopted another ordinance for the purpose of carrying out the provisions of the ordinance last referred to, which had been submitted and approved at the election. This ordinance hi effect authorized the contracting of an indebtedness on behalf of the city, and an issuance of its bonds in the sum of $65,000 for the purpose recited in the last ordinance, prescribed the form of the bonds, and the duties of the council in reference to the levy of a tax for the payment of interest and the redemption of the bonds, and was made irrfepealable until the indebtedness had been fully paid, as was required by law. Following this, a committee of the council,' duly authorized, tendered to the waterworks company the bonds of the city to the par value of $35,000 in exchange for a conveyance of the waterworks company’s plant and system, but the offer was refused. That thereafter, the proper authorities of the city were taking steps to issue and dispose of the full issue of the bonds for the purpose of constructing a water plant and system of their own, when this suit was commenced.
The only statutory provisions involved in the determination *83 of the issues presented, are subdivisions 6 of section 3312, Gen. Stats, as amended in 1891, aud subdivision 67 of the same section, as amended in 1893. The entire section relates to powers which are vested in citj'- councils, and boards of trustees in towns. The sixth subdivision provides that they shall have power, “ to contract an indebtedness on behalf of the city or town, and upon the credit thereof, by borrowing money or issuing the bonds of the city or town, for the following purposes, to-wit: * * * For the purpose of the purchase or construction of waterworks for fire and domestic purposes. * * * The total amount of indebtedness for all purposes shall not at any time exceed three per centum of the total assessed valuation of the taxable property in the city or town, except such debt as may be incurred in supplying the city or town with water and waterworks; and no loan for any purpose shall be made except it be by ordinance, which shall be irrepealable, etc. * * * But no such debt shall be created, except the supplying of the city or town with water, unless the question of incurring the same shall, at a regular election of officers for the city or town, be submitted to a vote of such qualified electors of the city or town as shall in the year next preceding have paid a property tax therein,” etc. Subdivision 67 of the section, as amended hi 1893, is as follows: “ 67. They shall have power to purchase or erect waterworks, gas works, or electric light works, or to authorize the erection of the same by others, but no such works shall be erected or authorized until a majority of the voters of the city or town who are taxpayers under the law, voting on the question at a general or special election, by vote approve the same.” The contention of the plaintiff is that the word “ or,” as it appears in subdivision 67, is used in the disjunctive and alternative sense, and that the city having elected to authorize the construction of waterworks for the supplying of water to the city and its inhabitants, its power in the premises was exhausted, and it has no power to construct waterworks of its own. The defendant city insists that the word is not used in such a sense, and that if the contention of plaintiff be *84 allowed, it would defeat the evident intent and purpose of the act, and would render it obnoxious to section 11, article 2 of the state constitution, which provides that “no law making any irrevocable grant of franchises, privileges or immunities, shall be passed by the general assembly.” It further contends that to cany out the obvious purpose and legislative intent, the word “ or ” should read “ and,” and that the judicial construction and interpretation should be that the city should be entitled to exercise all of the powers therein granted. We think that the contention of defendant is correct, and that it is fully sustained by reason and authority.
It is a well settled rule of statutory construction that all words and phrases used in a statute shall be understood and construed according to the approved and common usage of the language, and that some meaning shall be given to every word used. This rule is expressly recognized by our statute, and declared to be a law of this state. Gen. Stats, sec. 3141. It is equally, however, a well settled rule of construction that if no sensible meaning can be given to a word or phrase, or if it would defeat, manifestly, the real object of the enactment, it should be eliminated. Also, that for the same reason, words may be rejected as surplusage; also, to carry out tbe intention of the legislature, another word may be read for the word used, where the word used would manifestly defeat the legislative intent and the substitution of the other would carry it out. These may be said to be exceptions to the general rule as above announced, but the exceptions, as will be seen by an examination of the authorities, are almost if not quite in as general use as the rule itself. Especially with reference to the words “ or ” and “ and ” has it been frequently necessary to invoke this latter rule. As said by Mr. Sutherland: “The popular use of ‘or’ and ‘and’ is so loose and so frequently inaccurate, that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not' render the sense dubious, their accurate meaning is more readily departed from than that of other words, and one read *85 in place of the other in deference to the context.” Sutherland, Statutory Construction, § 252. Mr. Endlich says: “ To carry out the intention of the legislature, it is occasionally found necessary to read the conjunctions ‘ or ’ and ‘ and,’ one for the other. (Indeed, these words are said to be convertible into each other, as the sense of the enactment and the necessity of harmonizing its provisions may require.)” Endlich, Interpretation of Statutes, § 803. It is obvious to us that to carry out the intent of the legislature in the enactment under consideration, such a substitution of “ and ” for “ or ” must be made in this case. The primary object of the statute was to permit the inhabitants of towns and cities to secure an adequate supply of pure water, a paramount necessity, more important than all other public utilities and absolutely necessary for the sustenance of life, the preservation of health and the protection of property. This being the case it is to be presumed that the legislature desired to invest the people, who were themselves to bear the burdens of the expense, with every power necessary to supply this imperative want. The legislature itself could not determine and fix upon some one invariable mode or manner by which this supply was to be obtained, for the obvious reasons that too many conditions were to be considered; that what would be proper, necessary and entirely satisfactory at one town would be entirely impracticable in another. The inhabitants of one municipality might feel perfectly able to supply their own wants, whilst those of another might feel wholly unable to assume this burden. If it was the intent of the legislature to give to .the word “ or ” the meaning contended for by plaintiff, then it would in many instances open the door to results which would be disastrous. Suppose, for instance, that after the city had granted the franchise to an individual or company and accepted the works, the city had largely increased in territory and in population, so that the capacity of the waterworks was wholly insufficient to supply the wants of the people. Can it be said that because the contract with the individual was still in existence, the city could not take measures to *86 supply the imperative needs of its citizens ? Can it be for an instant conceded that the only remedy in such case is to accept such terms as the individual owners of the waterworks may impose upon them ? This would unquestionably in its result constitute a monopoly or exclusive privilege. Suppose, too, that the water was good and pure and wholesome at the time when the plant was originally constructed by the individual owner and accepted by the city, but that after-wards from some cause affecting its source, it had become unwholesome. Must the city be deprived of the power to protect and conserve the health and lives of its citizens because it had made this contract and granted this franchise ? A contingency might arise whereby it might become imperative to absolutely abandon the plant erected by the individual under his franchise, and the city might deem it wise to do so even at a loss of all the rentals which it had obligated itself to pay during the life of the contract; and yet in this emergency, notwithstanding the willingness of the municipal corporation to suffer a financial loss, it is powerless. Surely, neither upon reason, principle nor authority can it be held that it was ever contemplated that a municipal corporation should be bound hand and foot in emergencies of this character. It may be said however, and is said by counsel in this case, that the city is debarred only from the right to erect and construct its own waterworks system, and that it may, although it has granted one franchise to an individual, grant another to another individual. Suppose, however, that in the contingencies mentioned above, no individual presented himself or could be found who was willing to accept another franchise, then the city must of necessity submit to whatever exactions may be made by the one holding the franchise. In other words, the grant, while in its terms not exclusive, would become such under the reasoning of plaintiff, and hence obnoxious to the constitutional provision above referred to.
Again, if the rule which plaintiff invokes is to be applied to the construction of subdivision 67, then if in the first *87 instance the city had purchased a waterworks system erected by another, its power to supply its citizens with water would have been exhausted for all time. If in after years, by reason of the growth of the city, the system had become wholly inadequate to furnish a sufficient supply of water, and it had become advisable and necessary to construct a new system, abandoning the old, the city would have been powerless to do so, and powerless to have granted a franchise to a private citizen or company to construct such a system in order to furnish an increased supply. It is without the bounds of reason to consider for a moment that the legislature ever intended or contemplated a statutory enactment which might readily bring about such disastrous results.
We think it to have been clearly the intent of the legislature to vest in the authorities of cities and towns, entire discretion as to the use of any and all of the means specified in the statute to supply this paramount necessity. Such a conclusion is not in contravention of any statutory or constitutional provision, but is in accord with the general tenor, purpose and intent of the legislature in its enactments in reference to and for the government of towns and cities. The whole spirit of the law is so far as possible to permit under reasonable restrictions the privilege of self-government. In fact, that it was the intent of the legislature in its grant of powers to municipal corporations to give them the fullest power and utmost freedom of action with reference specially and exceptionally to the securing of such water supply as might be deemed needful, is clearly manifest from the very terms of the act. For this purpose and for this alone they might incur an indebtedness beyond the limit fixed by the statute, and there is no requirement even for submission to a vote of the taxpayers of any proposition concerning it, except where the municipality proposes to erect its own waterworks or authorize the construction by others. The city council might of its own motion without the 'authority of such vote purchase works and contract the necessary indebtedness therefor, and also exercise the right of condemnation specifically granted by subdivision 70 of the section.
*88 Neither does such a conclusion invade the rights of the company that holds the franchise. If its contract has not been forfeited by any of its acts, it can still continue to collect from the city all that it obligated itself to pay. This is all it could ask or legally demand. By constructing waterworks of its own, a city may become its competitor in the sale of water to the citizens, but the city did not undertake, either in terms or by legal implication, to in any manner protect it from competition in this respect. The holder of the franchise would have the same objection if the city, instead of building its own works, granted another franchise to another individual or company, and plaintiff’s counsel concede that this might be done. The city by its construction does not destroy the franchise of the company. It might and probably would impair its value, but of course the company could not complain, because the city had not by its contract bound itself to protect it from competition, nor precluded itself from the exercise of its right of construction. The granting of a new franchise to another company or individual would accomplish the same result. Lehigh Water Co.’s Appeal, 102 Pa. St. 528, and cases cited; Gas Light Company v. Hamilton City, 146 U. S. 268; Thomson-Houston Electric Co. v. City of Newton, 42 Fed. Rep. 724. The case last cited is very similar to the one at bar. The statute empowered cities to erect or to authorize the erection of electric light plants. The city of Newton authorized the plaintiff company to erect' and maintain a light plant in the city, for the supply of light to the citizens and for the streets of the city. The plant was erected, but afterwards the city took steps to erect a light plant of its own. This the company sought to enjoin, claiming as it is claimed here, that the power granted being in the alternative, and the city having elected to authorize the construction of a plant, it had no power to erect one of its own. It was also claimed that if the city was allowed to become the competitor of the company, it would destroy the value of the latter’s plant. Judge Shiras in an able opinion said, in speaking of the power of the city to erect its plant, *89 “ The statute confers the right so to -do upon the city, and I can see no ground. justifying the court in interposing by injunction and preventing the city from establishing its proposed plant.”
Nor can it be successfully maintained that the city by virtue of its contract or of the statute became under any obligation to purchase the water plant which had been erected. By the contract it simply reserved an option to purchase, and it nowhere bound itself, either in express terms or by reasonable implication, to exercise that option. The contract therefore imposed upon the city no requirement or duty to purchase. Long v. City of Duluth, 51 N. W. Rep. 915.
There is another rule of statutory construction to which we have not referred, which is especially applicable to this case, and still further fortifies our conclusions. It is to the effect that in construing a legislative grant of powers, if there is any ambiguity or doubt arising from the terms used, or if the grant be susceptible of two constructions, the doubt must always be resolved, and the grant be construed, in favor of the public. Gas Light Co. v. Hamilton City, supra; Smith v. Town of Westerly, 35 Atl. Rep. 528; Sutherland on Statutory Construction, § 378, et seq. It is also a well settled rule that statutes should be construed “ in the most beneficial way which their language will permit, to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests.” Sutherland, Statutory Construction, § 324, citing numerous cases.
We conclude therefore unhesitatingly, applying these principles and rules to the statute and to the circumstances of this case, that the defendant city had and has the right and power to construct its own waterworks system, as it has attempted to do.
In support of his position, plaintiff relies for authority almost entirely upon the case of White et al. v. City of Meadville, decided by the supreme court of Pennsylvania, 35 Atl. Rep. 695. We cannot see, however, that this case is at all in point. It turned upon two special statutes of Pennsyl *90 vania, which are not at all similar to those in this state. The contract made by the city of Meadville was under an act of the legislature which gave to water companies the right to introduce into boroughs and towns wherever they might be located a sufficient supply of pure water, and provided that when these works were completed, the right of the company was to be exclusive until during a period of five years, the company had' divided among its stockholders a dividend of eight per cent upon its capital stock. It further provided that after the lapse of a certain number of years, the city might become the owner of the works by paying the net cost of erecting and maintaining them, with interest thereon. In the determination of this case, there were no words or terms of doubtful import or meaning to be construed. It was held that the legislature clearly intended that the privilege should be exclusive as against the city, and that the city was amply protected in the securing of an adequate supply of water and from extortion and imposition by the terms of that and other statutes in force.
The main and controlling question in this case having been resolved against the plaintiff, we might content ourselves with simply affirming the judgment. Indeed, counsel have expressly stated in their brief that in such case they will not press the minor questions raised. As the matters involved in this litigation, however, concern a large number of people, and hence are of public importance, we will refer to a few of these minor questions, which are properly presented in the record. We do tins for' the reason that a failure to so do might tend to induce further litigation upon the subject-matter of this suit.
It is contended that the city ordinances involved in this suit are void because they in their nature cover two subjects, and are in the alternative. We do not so conclude. The one subject and object of both ordinances is to secure for the city the ownership of its own waterworks system, and to authorize an indebtedness therefor. It authorizes the purchase or construction, not the purchase and construction. It *91 was somewhat in the nature of an ordinance to take effect upon the happening of a contingent event, which is permissible. Dillon, Municipal Corporations, § 309. The offer to purchase could not be made until the indebtedness by issuance of bonds had first been authorized, and we see no reason why the city should have been compelled to first pass ordinances and exhaust its efforts to make a purchase before it would be permitted to submit to the people a proposition to erect its own waterworks in case of such failure. The delay and added expense would be an unreasonable requirement. The terms of the ordinances could by no possibility be misconstrued or result in deceiving any one.
In the agreed statement of facts, it is stipulated that the city is endeavoring to negotiate and sell its coupon bonds to the full amount of $65,000, as authorized by the city. It is contended on behalf of plaintiff that whilst the city is empowered to issue bonds, it is powerless to sell them. The words of the statute, subdivision 6, given above, are: “To contract an indebtedness on behalf of the city or town and upon the credit thereof, by borrowing money or issuing the bonds of the city or town,” Where the power to do an act is conferred upon a municipal corporation in general terms, without being accompained by any prescribed mode of exercising it, the city council must necessarily have a discretion as to the manner in which the power shall be used. Dillon, Municipal Corporations, § 94. If this were not the case, the power would in many instances be a barren one. By the statute above quoted, a municipality is given the power in certain cases to create an indebtedness, and two methods are prescribed by which this may be done, one by borrowing money, and the other by the issuance of the bonds of the city. Borrowing money, strictly and ordinarily speaking, would simply empower the city to negotiate a loan in the usual and ordinary manner prevalent in commercial circles, that is, to secure a loan from some individual or company, and execute its warrant or note or some similar evidence of indebtedness for it. If the contention of plaintiff be correct, *92 the city in case of borrowing would have no power to execute its note therefor.' The power to borrow, however, necessarily gives by implication the power to execute the usual evidences of indebtedness therefor. It was evident to the legislature, however, that this power alone would not be sufficient. In fact, it is a matter of common knowledge that the money with which cities and towns usually build their own waterworks, gas works, etc., is secured by the issuance and sale of its bonds. The city was therefore, in addition to being given the right to borrow, also empowered to contract the necessary indebtedness and to secure the money needed by the issuance of its bonds. When expressly given the power to issue, we think there is no doubt but that the power to use them in the ordinary and usual manner must be necessarily implied, at least, that it must be so necessarily implied in cases like that under consideration, where the contrary view would tend to defeat the use of the power. Ordinarily, when such works are constructed, the builders, the contractors, the laborers and the material men must be paid in cash. It is manifest that an authority given to pay them in bonds only would very probably serve to impose an additional burden upon the city. In some cases it might wholly defeat the proposed improvement. In addition to this, the language of the act itself would seem to expressly indicate that the city had the right to sell the bonds. It says, “ No loan for any purpose shall be made except it be by ordinance, which shall be irrepealable until the indebtedness therein provided for shall be fully paid, specifying the purpose to which the funds to be raised shall be applied.” How could the funds be raised, unless by the -sale of the bonds? We do not intend to say that there might not be an abuse of this power; as, for instance, if there should be an attempt to sell the bonds at a sum far below their real value, and that in such case the courts might interfere; but no such case is presented here. The two leading authorities cited by plaintiff do not sustain his position. In City of Brenham v. Germam-American Bank, 144 U. S. 173, the court held that the only power conferred *93 by statute was to borrow money. Merrill v. Monticello, 138 U. S. 673, was a case which came up from Indiana. It was held by the highest courts of that state that the right to borrow money was a power incident to municipal corporations in the absence of positive restriction as a means of executing the powers conferred upon them, — in other words, that along with the express and substantive powers conferred by their charters, corporations take by implication all the reasonable modes of executing such powers which a natural person may adopt. The federal court recognized this construction of the Indiana statutes, but held that the power to borrow money did not carry with it the further implication to issue bonds for circulation in the open market. The court said (page 691): “ It does not follow that because the town of Monticello had the right to contract a loan, it had therefore the right to issue negotiable bonds and put them on the market as evidences of such loans. To borrow money and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are in their nature and in their legal effect, essentially different transactions. In the present case all that can be contended for is, that the town had the power to contract a loan, under certain specified restrictions and limitations. Nowhere in the statute is there any express power given to issue negotiable bonds as evidence of such loan.” It will be seen that in this case the existence of the power to issue bonds was the vital question. The power to sell if the municipality had the power to issue was not in question. We regard the case as being upon principle an authority in support of our position in the case at bar. Here there can be no question as to the authority to issue the bonds, because it is expressly given by statute. This being granted, would not the municipality take by necessary implication the power to dispose of them when issued in all the reasonable modes which a natural person might adopt ? The mode most generally adopted in similar cases is to sell the bonds and use the proceeds for the purposes intended.
*94 It is also urged in favor of the equitable interposition of tbe court that if the proposed action of the city is permitted, it will result in increased taxation in the nature of double taxation, because the city will still be compelled to pay to the water company the rental for fire hydrants which it contracted to pay, while at the same time it will have works of its own constructed and maintained by taxation, of sufficient capacity to supply the hydrants. This argument proceeds upon the theory that the contract with the water company would still be in force, not having been forfeited as contended by the city. This may or may not be true. It is not an issue in this case, and the facts upon which to base an opinion are not before us. It is of course apparent that the issuance of the bonds would materially increase the indebtedness of the city and impose upon its citizens additional burdens of taxation, but this is a matter with Avhich the courts can have no concern. The power is a discretionary one vested in the municipality. In favor of its judicious and prudent exercise the law wisely establishes every possible safeguard. Both the city counsel and a majority of the taxpayers must concur. It would seem that they should be equally at least as capable as the courts of determining what would be for the best interests of the city. We are unable to discover why the exercise of this power to create an. indebtedness for a paramount necessity which cannot be secured without incurring a municipal indebtedness in some form, could not, within the limits and restrictions fixed and imposed by statute, be safely intrusted to the people who must pay the debt.
These are all of the questions which we deem necessary to de determined, and being resolved in favor of the defendant, the judgment will be affirmed.

Affirmed.