No. 26059

**Auraria Businessmen Against Confiscation, Inc., Robert T. Walker, Moses Katz, and Ivan Goldstein, et al. v. Denver Urban Renewal Authority**

(517 P.2d 845)

Decided January 14, 1974.

Jon L. Holm, Peter D. Willis, for plaintiffs-appellants.

Berge, Martin & Clark, William Berge, Paul C. Benedetti, for defendant-appellee.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This appeal involves the application and constitutionality of the relocation payment provisions of the Urban Renewal Law, C.R.S. 1963, 139-62-1, *et seq.,* and the Relocation Assistance and Land Acquisition Policies Act, 1971 Perm. Supp., C.R.S. 1963, 69-10-1, *et seq.*

Appellants sought to restrain the Denver Urban Renewal Authority (DURA) from further land acquisition activities in the Auraria urban renewal development, and to have declared unconstitutional sections of the statutes under which DURA was exercising its authority.

Appellants' ex parte motion for a temporary restraining order was granted by the trial court, which ordered that DURA refrain and desist from any activity relating to the acquisition of property within the Auraria urban renewal

area. After a hearing on the merits, the court dissolved the restraining order and denied appellants' motion for a temporary injunction. The court found the statutes to be constitutional and denied the requested declaratory and injunctive relief. We affirm the judgment.

C.R.S. 1963, 139-62-5(11), empowers urban renewal authorities "[t]o make reasonable relocation payments to or with respect to individuals, families and business concerns situated in an urban renewal area which will be displaced as aforesaid, for moving expenses and actual direct losses of property (except good will or profit) resulting from their aforesaid displacement for which reimbursement or compensation is not otherwise made including the making of such payments financed by the federal government." It is appellants' position and they argue that by denying compensation for loss of goodwill or profit associated with the dislocation, the statute deprives them of property without due process of law and without just compensation, and discriminates against them as a class in violation of the Equal Protection clauses of the federal and state constitutions.

1971 Perm. Supp., C.R.S. 1963, 69-10-4, authorizes a payment in addition to a condemnation award of a sum not to exceed $15,000 for homeowners to aid them in securing a comparable replacement dwelling. Section 69-10-5 provides for a like payment not to exceed $4,000 for tenants. Nowhere does this statute provide for a comparable payment for business owners whose businesses are dislocated. This, appellants contend, creates an illegal and unconstitutional classification in violation of the Equal Protection clauses.

The issues on this appeal as framed by the briefs are: First, may actions in eminent domain be enjoined? Second, are goodwill and profits compensable under eminent domain? And, third, do either of the above mentioned statutes create discriminatory or unjustified classifications without rational basis and thus deny appellants due process and equal protection of the law? We answer all questions in the negative.

## I.

■■ Appellants' argument that the court erred in denying injunctive relief flies in the face of the numerous decisions of this Court holding to the contrary. *Colorado Springs v. Crumb,* 148 Colo. 32, 364 P.2d 1053; *Ambrosio v. Baker District,* 139 Colo. 437, 340 P.2d 872; *Glendale v. Denver,* 137 Colo. 188, 322 P.2d 1053; *Scanland v. Commissioners,* 97 Colo. 37, 46 P.2d 894; *Lavelle v. Julesburg,* 49 Colo. 290, 112 P. 774. *See also, Dunham v. Golden,* 31 Colo. App. 433, 504 P.2d 360; *Colorado Central Power Co. v. City of Englewood,* 89 F.2d 233 (10th cir. 1937). *See generally,* 6A *Nichols, Eminent Domain* § 28.22; 27 Am. Jur. 2d *Eminent Domain* § 487. Constitutional objections to the eminent domain proceedings should be raised in those proceedings and be determined by the court *in limine* and not by way of a collateral injunction proceeding.

## II.

As heretofore noted, C.R.S. 1963, 139-62-5(11), authorizes urban renewal authorities to make reasonable relocation payments to or with respect to individuals, families and business concerns which will be displaced, for moving expenses and actual direct losses of property (except goodwill and profit) resulting from their displacement for which reimbursement or compensation is not otherwise made. This is in addition to the power to acquire property and make payment therefor under eminent domain as provided in C.R.S. 1963, 139-62-5(6).

Appellants contend that the goodwill and profits have a definite value associated with the location of a business, which will be destroyed upon relocation. Since the statute denies them compensation for these losses, it deprives them of property without compensation or due process of law. Moreoover, they argue that since the only people who have goodwill and profits are businessmen, the statute impermissibly discriminates against businessmen.

■ It is well-settled that the goodwill of a business, though not property in and of itself, has value and may form

the subject matter of a sale. *Lerner v. Stone,* 126 Colo. 589, 252 P.2d 533; *Herfort v. Cramer,* 7 Colo. 483, 4 P. 896. Nevertheless, goodwill and profits traditionally have not been regarded as elements of just compensation under either the due process or just compensation clauses of the federal and state constitutions. *See, e.g., Mitchell v. United States,* 267 U.S. 341, 45 S.Ct. 293; 69 L.Ed. 644; *State v. Woodham,* 288 Ala. 608, 264 So.2d 166; *Restaurants, Inc. v. City of Wilmington,* 274 A.2d 137 (Del. Supr.); *Verzani v. State Department of Roads,* 188 Neb. 162, 195 N.W.2d 762. *Compare Michigan State Hwy. Comm. v. L. & L. Concession Co.,* 31 Mich. App. 222, 187 N.W.2d 465 with *Detroit v. Whalings, Inc.,* 43 Mich. App. 1, 202 N.W.2d 816. *See generally,* 2 *Nichols, Eminent Domain* § 5.76; 4 *Nichols, Eminent Domain* § 13.3; 27 Am. Jur. 2d *Eminent Domain* § § 285 and 287.

Although the rule has been criticized and in some jurisdictions severely limited or rejected,[1] this Court has adhered to the view that changing the rule to correct supposed inequities is properly a matter of legislative action and not judicial declaration. *Denver v. Tondall,* 86 Colo. 372, 282 P. 191. We reaffirmed this rule in *City and County of Denver v. Hinsey,* 177 Colo. 178, 493 P.2d 348, where it was observed:

"The reasoning behind these cases is that the business itself is not being condemned and the business can be relocated elsewhere. Financial success in business is also too ephemeral and is tied to considerations involving the type of business which is being conducted, management, and a variety of other factors which are not tied to the land. * * *"

We do not construe section 139-62-5(11) as creating additional elements compensable under our eminent domain laws. Rather, its purpose is to provide supplemental assist-

---

[1] *See Bowers v. Fulton County,* 221 Ga. 731, 146 S.E.2d 884; *State v. Saugen,* 283 Minn. 402, 169 N.W.2d 37; *Luber v. Milwaukee County,* 47 Wis. 2d 271, 177 N.W.2d 380; *Aloi and Goldberg, A Reexamination of Value, Goodwill, and Business Losses in Eminent Domain,* 53 Cornell L. Rev. 604 (1968).

ance for particular losses incurred by reason of dislocation, in an effort to reduce the burden falling on the property owner whose property is condemned. Our attention has not been directed to anything in the federal or state constitutions which mandates compensation for these losses incidental to the dislocation, including goodwill and business profits, and we regard the supplemental payments to be statutory grants. It was for the legislature in its discretion to declare what, if any, expenses and losses should be reimbursed by supplemental payments. We cannot say, as appellants argue, that the omission of supplemental payments for the loss of goodwill and profit in section 139-62-5(11) renders it unconstitutional.[2]

---

[2] We note that in the area of urban renewal and housing relocation assistance, the scheme of federal assistance requires state compliance with federally declared standards of action. For example, as a condition to receiving financial assistance under the federal Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C. § 4601 *et seq.*, state agencies must give satisfactory assurances that they will make the relocation payments required of federal agencies under sections 4622, 4623 and 4624 of the Act. See 42 U.S.C. § 4630.

It is clear that Congress regarded these payments, as well as payments for direct losses of property and moving expenses associated with relocation, as being supplementary to traditional eminent domain compensation. The Committee on Public Works in House Report No. 91-1656 noted:

"As the thrust of Federal and federally assisted programs have shifted from rural to urban situations, it became increasingly apparent that the application of traditional concepts of valuation and eminent domain resulted in inequitable treatment for large numbers of people displaced by public action." 1970 U.S. Code Cong. & Admin. News 5851.

In section 4622(c) Congress has provided for an optional fixed relocation payment which is designed to compensate those most hard hit for their lost profits and goodwill. That section provides that a person who is displaced from his business or farm may, whether he discontinues or re-establishes operations, elect to receive a fixed relocation payment equal to the average net earnings of the business or farm operation, except that such payment shall not be less than $2,500 nor more than $10,000. However, the business must establish that it cannot be relocated "without a substantial loss of its existing patronage," and that it is not part of a chain store operation. The Colorado legislature has authorized such payments in 1971 Perm.

III.

■ Appellants contend that the sections of the Urban Renewal Law and the Relocation Assistance Act with which we are here concerned create discriminatory and unjustified classifications which deny appellants, as small businessmen, equal protection of the law. We view appellants' argument as falling far short of demonstrating unconstitutionality.

■ As before observed, the statutes grant relocation assistance for the purpose of minimizing hardship incurred from involuntary dislocation of homeowners, tenants and businesses under the eminent domain proceedings involved in slum clearance and urban renewal projects. It has not been shown that the statutes interfere with, limit or restrict any rights guaranteed by the constitution. Nor do we perceive that there is any constitutional right to relocation benefits or assistance. Appellants have not shown the classifications as being "suspect," such as would cast upon the state the heavy burden of justification by showing a compelling state interest. *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534; *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Viewed in this aspect, the statutes are entitled to the usual presumption of constitutionality and the burden is upon appellants to show beyond a reasonable doubt the alleged unconstitutionality. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95.

Initially we do not perceive, as appellants argue, that the statutes deal with only one class of persons, that is, those who are displaced by an urban renewal authority, and that

Supp., C.R.S. 1963, 69-10-3(3). The $2,500 minimum is designed to assist "mom-pop" store owners who may lose their sole or primary source of income by relocation. *See* 1970 U.S. Code Cong. & Admin. News 5857.

It would appear that appellants' claim for reimbursement for loss of goodwill and profits may be partially satisfied under the provisions of 1971 Perm. Supp., C.R.S. 1963, 69-10-3(3).

the different treatment of the businessman within the one class results in an invidious discrimination. Rather, the statutes classify the displaced persons into separate classes of homeowners, tenants, and businesses, and 'accord the same treatment to all alike within each class.

The validity of the general public purposes of the statutes — slum clearance and urban renewal, and relocation assistance — being assumed (*Rabinoff v. District Court*, 145 Colo. 225, 360 P.2d 114), it remains only to determine whether the statutory scheme of classification, and the different treatment of the various classes, has a rational basis.[3]

Examination of the legislative history of the federal acts upon which our statutes were founded clearly demonstrates a rational basis for the classifications and the different treatment accorded the classes benefitted. Recognition was given to the inadequate supply of low-income replacement housing available to displaced homeowners. The compensation by way of eminent domain for the houses taken is ordinarily insufficient to allow the acquisition of similar housing, and thus hardship follows. In the case of tenants, it was also recognized that there is a scarcity of decent, safe, and sanitary rental housing for displaced low-income families and individuals at rentals they can afford. Although the displaced businessman has his particular problems, the housing considerations do not necessarily affect him, and therefore justify a different classification and treatment for the homeowners and tenants than is accorded the businessman. *See* 1970 U.S. Code Cong. & Admin. News at 5850-52 and 5857-61. We cannot say in view of these considerations that the classifications and the treatment afforded the classes under the

---

[3] 1971 Perm. Supp., C.R.S. 1963, 69-10-4, provides a payment of up to $15,000 for replacement housing for homeowners. Section 69-10-5 provides for a payment of up to $4,000 for replacement of rental housing for tenants. No such similar provisions are made for displaced business concerns, although section 69-10-3(3) provides, in the case of a business, a formula for payment of either moving and related expenses, or in lieu thereof of a fixed payment of an amount equal to the average annual net earnings of not less than $2,500 nor more than $10,000.

statutes here considered are not reasonable.

In *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, the Supreme Court said that the constitutional safeguard of equal protection is offended only if the classification rests upon grounds wholly irrelevant to the achievement of the State objectives. Similarly, in *McDonald v. Board of Election,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739, the Court said:

"* * * Though the wide leeway allowed the States by the Fourteenth Amendment to enact legislation that appears to affect similarly situated people differently, and the presumption of statutory validity that adheres thereto, admit of no settled formula, some basic guidelines have been firmly fixed. The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal. Legislatures are presumed to have acted constitutionally * * * and their statutory classifications will be set aside only if no grounds can be conceived to justify them [citations omitted]. With this much discretion, a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.' Williamson v. Lee Optical of Oklahoma, Inc., 348, U.S. 483, 489 [75 S.Ct. 461, 465, 99 L.Ed. 563] (1955); and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. * * *"

Finally, in *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, the Court stated that in the area of economics and social welfare — with which we are here concerned — the Equal Protection Clause is not violated merely because the classifications made are imperfect, even though some inequity results, so long as there is a reasonable basis for the classifications.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE does not participate.