## No. C-387

## Emmett Ossman v. The Mountain States Telephone and Telegraph Company, a Colorado corporation
(520 P.2d 738)

Decided March 25, 1974.                    Rehearing denied April 22, 1974.

Anthony F. Zarlengo, A. J. Laing, for petitioner.

Joseph C. O'Neil, Cotton Howell, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the decision of the Court of Appeals in *Ossman v. Mountain States Telephone & Telegraph Co.,* 32 Colo. App. 230, 511 P.2d 517 (1973). The Court of Appeals, in reversing the judgment of the trial court, held that an entity which has the statutory power of eminent domain cannot be held liable for a non-intentional trespass where the trespass occurred while such entity was pursuing a public purpose. We disagree and hold that a landowner has a right to sue in trespass even though the trespasser may have the statutory power of eminent domain with respect to the land on which the trespass occurs. For the reasons set out below, the judgment of the trial court is likewise reversed.

In 1967 defendant Mountain States Telephone and Telegraph Co. (Mountain Bell) laid a sub-surface telephone cable across property owned by Emmett Ossman. Except for the 338.58 feet which crossed Ossman's property, the cable was laid within the right-of-way of State Highway 91. The cable severed approximately one-half acre from the rest of Ossman's tract.

Ossman first became aware of the trespass in June of 1970 when he visited the property to determine the feasibility of developing it as a trailer court. He immediately contacted the local manager for Mountain Bell and requested that something be done about the trespass. Mountain Bell took no action. As a consequence, Ossman hired a surveyor to determine the extent of the intrusion on his land. About six weeks later Ossman again contacted the local manager who

advised him that the matter would be referred to a Mr. Hanson, a right-of-way engineer for Mountain Bell.

Ossman suffered a stroke on July 17, 1970, and spent about six months convalescing. In January, 1971, not having heard from Mountain Bell, Ossman again sought out the local manager. On this occasion he advised the manager that he was going to take legal action unless he was compensated for an easement or unless the cable was removed. Three days later Hanson surveyed Ossman's land and acknowledged to him that the cable did indeed cross his land.

In March, 1971, Hanson offered Ossman $42 for a right-of-way 10 feet wide where the cable crossed Ossman's land. Ossman rejected the offer and retained an attorney to represent him in the matter.

About March 20, 1971, Ossman's attorney contacted Cotton Howell, an attorney for Mountain Bell, and asked that the Company remove the cable from the premises or immediately commence condemnation proceedings. He also suggested that Ossman would accept $1,000 as compensation for an easement for the cable. Howell replied by letter dated March 30, 1971, stating that the $42 offer was "the maximum amount we are permitted to pay under the circumstances, . . ." and requested a counter proposal. At trial the evidence developed that the $42 offer represented the value of the easement to Mountain Bell. It in no way contemplated the value of the easement to Ossman or its effect on the most advantageous use to which Ossman's land might be put in the future.

Ossman's attorney wrote four additional letters repeating his demand that the Company either remove its cable from Ossman's land or immediately commence eminent domain proceedings. Howell's replies were not responsive to plaintiff's requests. His final letter of May 20, 1971, suggested only a further meeting between counsel at which the parties might reach an "amicable settlement."

At this point having only the $42 offer to consider, Ossman filed the instant lawsuit. In his complaint he sought damages for the trespass and additionally, sought exemplary

damages for conduct alleged to be in "wanton and reckless disregard of Plaintiff's rights and feelings." Defendant answered and pleaded as an affirmative defense[1] that Ossman was limited to the measure of damages that he could recover in an inverse condemnation proceeding. At trial Ossman continued to press his trespass claim. Mountain Bell defended as if Ossman was proceeding in inverse condemnation. The trial court in resolving the controversy combined the two theories by directing a verdict for Ossman on his trespass claim and submitting a verdict describing the property taken which granted Mountain Bell an easement for the installation and maintenance of its cable. The jury awarded Ossman $1,942 in actual damages for the easement and damages to the residue of this land and $2,308 in exemplary damages.

■ The threshold question is whether Mountain Bell may be liable for trespass under the particular circumstances in this case. The Court of Appeals held that the trial court should have treated Mountain Bell's counterclaim for inverse condemnation as a petition in eminent domain and proceeded to a determination of whether the taking was necessary and proper. If the trial court found that the taking was a necessary and proper exercise of the eminent domain power, the trespass action would not lie. Ossman concedes that Mountain Bell could condemn his property, and, in fact, he repeatedly requested that they do just that. He maintains that he may elect at the outset whether to proceed in trespass or inverse condemnation. We agree that Ossman had the right to elect to sue in trespass under the circumstances here. We find no sound reason why a landowner should be limited to an inverse condemnation remedy where a trespasser refuses to promptly initiate eminent domain proceedings. *Seven Lakes Reservoir Co. v. Majors,* 69 Colo. 590, 196 P. 334 (1921); *Chicago, Rock Island & Pacific Ry. Co. v. Hayes,* 49 Colo. 333, 112 P. 315 (1911); *Denver & S.F. Ry. Co. v.*

---

[1] Defendant subsequently amended its answer to claim an easement across Ossman's property by virtue of inverse condemnation. Of course, only a landowner may assert a claim in inverse condemnation. We do not regard this amendment as changing the legal basis of defendant's position.

*School District No. 22,* 14 Colo. 327, 23 P. 978 (1890); *County of San Luis Obispo v. Ranchita Cattle Co.,* 16 Cal.App.3d 383, 94 Cal.Rptr. 73 (1971); *County of Harris v. Southern Pacific Transportation Co.,* 457 S.W.2d 336 (Texas App. 1970). *See also State ex rel. Firestone Tire & Rubber Co. v. Ritchie,* 153 W.Va. 132, 168 S.E.2d 287 (1969); *Beetschen v. Shell Pipeline Corp.,* 363 Mo. 751, 253 S.W.2d 785 (1952); 6 A *Nichols, Eminent Domain* § 28.3 (3d.Ed. 1973).

█ In the event of a retrial Ossman may again seek to recover his actual damages for the trespass. *See Colorado Jury Instructions* 18:2. Ossman alleges conduct which would justify an award of exemplary damages. Thus, if Ossman pursues the trespass claim, the issue of exemplary damages may also be submitted to the jury. C.R.S. 1963, 41-2-2. Additionally, we hold that under the circumstances of this case, Ossman should be allowed to establish any special damages incurred as the result of the trespass, including litigation costs. This will enable the jury to determine all damages suffered by the plaintiff as a result of the trespass. *Colorado Bridge and Construction Co. v. Preuit,* 75 Colo. 107, 224 P. 222 (1924); *Big Five Mining Co. v. Left Hand Ditch Co.,* 73 Colo. 545, 216 P. 719 (1923).

█ Although Ossman attempted to proceed at trial on the theory of trespass, the trial court combined elements of the measure of damages of a trespass action and an inverse condemnation action in his instructions. As a result, the verdict which was submitted to the jury was not applicable to either trespass or inverse condemnation. This, of course, was error and requires a reversal of the judgment of the trial court.

█ An inverse condemnation action is based on Article II, Section 15 of the Colorado Constitution. *Hayutin v. Colorado State Department of Highways,* 175 Colo. 83, 485 P.2d 896 (1971), *cert. denied* 404 U.S. 991; *Majestic Heights Co. v. Board of County Commissioners of Jefferson County,* 173 Colo. 178, 476 P.2d 745 (1970); *Board of Commissioners of Logan County v. Adler,* 69 Colo. 290, 194 P. 621 (1920); *Denver Circle R. Co. v. Nestor,* 10 Colo. 403, 15 P.

714 (1887). Since it is based on the "takings" clause of our constitution, it is to be tried as if it were an eminent domain proceeding. *Stuart v. Colorado Eastern R. Co.,* 61 Colo. 58, 156 P. 152 (1916).

■ C.R.S. 1963, 50-1-7 provides that a landowner may demand a jury of *freeholders* to determine the damages or compensation to be awarded in an eminent domain proceeding. The same right should likewise be afforded a landowner seeking redress, after the fact, in an inverse condemnation action. The requirement of a jury of freeholders in an inverse condemnation action and the lack of such a requirement in an ordinary civil action leads us to conclude that an inverse condemnation claim cannot be litigated in the same lawsuit with a common law claim.

■ Eminent domain proceedings are special statutory proceedings and are to be conducted strictly according to the procedures set out in the eminent domain statute, C.R.S. 1963, 50-1-1, *et seq. Vivian v. Board of Trustees of Colorado School of Mines,* 152 Colo. 556, 383 P.2d 801 (1963); *Stalford v. Board of County Commissioners,* 128 Colo. 441, 263 P.2d 436 (1953); *Old Timers Baseball Association of Colorado v. Housing Authority,* 122 Colo. 597, 224 P.2d 219 (1950); *Colorado Central Ry. Co. v. Humphrey,* 16 Colo. 34, 26 P. 165 (1891). We stated in regard to the eminent domain statute in *Humphrey, supra:*
"Where a statute gives a new power, and at the same time provides the means of executing it, those who claim the power can execute it in no other way." 16 Colo. 34, 36.

■ Since the eminent domain statute nowhere provides for exemplary damages, it follows under *Humphrey, supra,* that such damages are not to be allowed in a special statutory proceeding for condemnation. As stated above, an inverse condemnation action is in the nature of a special statutory proceeding and is to be tried as if it were an eminent domain proceeding. *Stuart v. Colorado Eastern Ry. Co., supra.* Thus, the exemplary damages statute, C.R.S. 1963, 41-2-2, which authorizes the award of exemplary damages in "all civil actions," is not applicable to an inverse

condemnation action. It was error for the trial court to allow exemplary damages in an action in which damages were awarded for a taking.

The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals with directions to reverse the judgment of the trial court and to remand to the trial court for further proceedings consonant with the views herein expressed.

MR. JUSTICE GROVES does not participate.