Harold E. CLARE, Plaintiff–Appellant,

v.

FLORISSANT WATER AND SANITATION DISTRICT, Defendant–Appellee.

No. 93CA1609.

Colorado Court of Appeals, Div. III.

July 28, 1994.

Mitchell & Howell, P.C., Michael T. Mitchell, Parker, for plaintiff-appellant.

Dale W. Pedersen, Colorado Springs, for defendant-appellee.

Opinion by Judge JONES.

In this action premised on the theory of inverse condemnation, plaintiff, Harold E. Clare, appeals the summary judgment entered against him and in favor of defendant, Florissant Water and Sanitation District (District). We reverse and remand for further proceedings.

Clare owned and operated Florissant Water Service, providing water to customers in Florissant, Colorado, and its vicinity. The District is a special district organized in 1980 pursuant to the predecessor statute to the Special District Act, §§ 32–1–101 et seq., C.R.S. (1993 Cum.Supp.). In accordance with § 32–1–1006, C.R.S. (1993 Cum.Supp.), the District has the authority, *inter alia*, to acquire water rights and to construct and operate lines and facilities within and outside the District; to exercise the power of eminent domain; and to compel owners of certain premises to connect to the District's water and sewer lines.

Commensurate with its statutory responsibilities, the District constructed a public water works system. In May 1991, the District directed owners of all residential and commercial properties then existing or planned within the District's service area to connect to the District's water system. It is undisputed that, while Clare was the sole water provider prior to the District's organization, at no time did Clare hold an exclusive franchise, license, or contract to provide water within the District's boundaries. It is further agreed that the District has not physically taken any of Clare's wells, pipe, or other physical equipment.

Clare commenced this action by filing a complaint in which he sought compensable damages for the alleged taking of his property by the District. He asserted that the District had effectively rendered his business useless and that it had failed to institute eminent domain proceedings against his business or to compensate him for the diminished value of his property.

The trial court, upon the District's motion for summary judgment, found that the District had not physically taken any of Clare's land or facilities and that Clare had no contract or franchise to provide water to the residents of the District. For the purpose of the motion, the court accepted as true Clare's allegation that the District had rendered his business nearly worthless. Nevertheless, the court granted judgment for the District, concluding that the District could not be held liable under a theory of inverse condemnation for exercising its statutory powers.

On appeal, Clare contends that the trial court erred in granting summary judgment and dismissing his complaint. He argues that, since the District, in effect, confiscated his market, a compensable taking occurred. Under the circumstances here, we agree.

Colo. Const. art. II, § 15, provides, in relevant part: "Private property shall not be taken or damaged, for public or private use, without just compensation." Inverse condemnation actions, as well as eminent domain actions, may arise from this provision. *Ossman v. Mountain States Telephone & Telegraph Co.*, 184 Colo. 360, 520 P.2d 738 (1974).

A "taking" occurs when an entity, clothed with the power of eminent domain, substantially deprives a property owner of the use and enjoyment of property. *City of Northglenn v. Grynberg*, 846 P.2d 175 (Colo. 1993).

As a general rule, a taking of property occurs, within the meaning of the constitutional provision, when the confiscatory action involves an actual interference with the physical use, possession, or enjoyment of the

property, or a legal interference with the owner's power of disposition of it. A taking also occurs if an owner is required to forego the economically beneficial use of his or her property, and when a governmental entity takes actions which translate to an exercise of dominion and control. *City of Northglenn v. Grynberg, supra.*

■ However, the government is not *per se* precluded from constructing and operating its own waterworks in competition with a privately held company, *see Town of Glenwood Springs v. Glenwood Light & Water Co.,* 202 F. 678 (8th Cir.1912); *Thomas v. City of Grand Junction,* 13 Colo.App. 80, 56 P. 665 (1899), even though it may be acting in a proprietary or business capacity, and not in its governmental capacity. *City of Northglenn v. City of Thornton,* 193 Colo. 536, 569 P.2d 319 (1977). Thus, a compensable taking does not occur when the government enters into competition with an existing business, even if that business suffers economic harm as the result of the competition. *See Amos Plumbing & Electric Co. v. Bennett,* 261 Ga. 810, 411 S.E.2d 490 (1992); *Water Development Co. v. Board of Water Works,* 488 N.W.2d 158 (Iowa 1992); 29A C.J.S. *Eminent Domain* § 107. *See also* 2 J. Sackman, *Nichols on Eminent Domain* § 6.01 (1994). And, the fact that a municipality competes for new customers within an area where a public utility already operates does not, alone, amount to a compensable taking. *Union Rural Electric Ass'n v. Town of Frederick,* 670 P.2d 4 (Colo.1983); *Public Utilities Commission v. City of Loveland,* 76 Colo. 188, 230 P. 399 (1924).

■ Also, compensation ordinarily will not be due a property owner whose property has merely depreciated in value by governmental action. Similarly, incidental diminution of business profit is not generally regarded as an element of compensable damage in the absence of an authorizing statute. *City of Northglenn v. Grynberg, supra; Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Authority,* 183 Colo. 441, 517 P.2d 845 (1974).

■ Here, the District has exercised its statutory power under §§ 32–1–1006(1)(e) and 32–1–1006(1)(f), C.R.S. (1993 Cum.Supp.) to require its residents to connect to its water system, to the detriment of Clare's pre-existing business which previously had been the sole provider of water for the community. There is no suggestion that this exercise of authority was *ultra vires* or otherwise without statutory grant. Nevertheless, actions taken in the proper exercise of governmental authority, even if done in furtherance of the accomplishment of some appropriate or necessary public purpose, may, in some circumstances, constitute a taking which constitutionally requires compensation. *See Bethlehem Evangelical Lutheran Church v. City of Lakewood,* 626 P.2d 668 (Colo. 1981).

The record reflects that the District has excluded Clare from the market by requiring residents within the service area to hook up to the District's system. Because we determine that there are justiciable issues as to whether the District's actions leave no basis on which Clare could compete with it, the District may be required to pay Clare compensation for the damage caused by the exclusion. *See Poudre Valley Rural Electric Ass'n v. City of Loveland,* 807 P.2d 547 (Colo. 1991).

■ Furthermore, in light of the rubric of *Poudre Valley,* and under the circumstances here, the fact that Clare does not have an exclusive contract, license, or franchise does not preclude compensation. Clare's facilities and his right to serve his customers are property for purposes of the "taking" clause of Colo. Const. art. II, § 15.

In *Poudre Valley,* the previous *sole* provider in the area annexed by the city of Loveland had been excluded from providing certain service. That case stands for the proposition that, under such circumstances, if the prior utility is excluded or if its facilities are condemned, a taking occurs regardless of the status of the appropriated facilities, and compensation is due. *See Poudre Valley Rural Electric Ass'n v. City of Loveland, supra.*

An owner is entitled to compensation for the value of a business when a governmental authority appropriates the business. This principle applies to the circumstances here,

for Clare's business itself remains legally intact but may have been reduced to worthlessness by the actions of a governmental subdivision which has excluded a private competitor from the market. *See Gully v. Southwestern Bell Telephone Co.*, 774 F.2d 1287 (5th Cir.1985).

The District insists it has not appropriated any of Clare's equipment or physical property. However, if Clare's facilities cannot be removed from the District's service area or otherwise re-used, the District has, as a practical matter, condemned those facilities. Hence, Clare would be entitled to compensation for such condemnation, as well as to damages for property not physically appropriated but, nevertheless, damaged by the District's actions. *Poudre Valley Rural Electric Ass'n v. City of Loveland, supra.*

The judgment is reversed, and the cause is remanded with directions to reinstate the complaint and for further proceedings consistent with the views herein expressed.

PLANK, J., concurs.

KAPELKE, J., dissents.

Judge KAPELKE dissenting.

I respectfully dissent.

In my view, the trial court correctly granted summary judgment in favor of defendant. I agree with the trial court that, because Clare had no governmental contract or franchise, he did not suffer a compensable taking of property within the meaning of Colo. Const. art. II, § 15.

Here, Clare does not contend that the District has acquired his land or physically taken over his actual water distribution facilities. Rather, he premises his claim on the loss of his customers and business which resulted from defendant's actions in establishing a special water district and requiring Clare's customers to hook up to the District's water lines.

By statute, the District has the power to compel landowners to connect their premises to the District's water lines. Section 32–1–1006(1)(a), C.R.S. (1993 Cum.Supp.).

The pivotal question is whether the District's statutorily authorized actions constituted a taking of a property interest of Clare so as to entitle him to an award of compensation based upon a claim of inverse condemnation.

Clare had no governmental franchise or exclusive right to furnish water to the residents within the District. Generally, it is recognized that the mere expectation of continued business and customers, standing alone, is not a sufficient property interest to support an award of compensation for inverse condemnation. *See* 2 J. Sackman & P. Rohan, *Nichols on Eminent Domain* § 5.22[5] at 5–285 and § 5.24 at 5–291 through 5–298 (rev. 3d ed. 1994).

Without a franchise or exclusive contract, Clare lacks a sufficient "property" interest to support an award of compensation here:

> Unless a municipality has granted an exclusive franchise, or has otherwise entered into a valid contract not to compete with a public service company, where it has authority so to do, it may construct a competing water or light plant or street railway, even though the competition may be ruinous, provided there is no statute requiring it to purchase the plant of the existing company engaged in furnishing a supply or service. . . .

12 E. McQuillin, *Municipal Corporations* § 35.13 at 515 (3d rev. ed. 1986).

If Clare held such a franchise, I would agree that he would have a valid claim for inverse condemnation as recognized in *Poudre Valley Royal Electric Ass'n v. City of Loveland*, 807 P.2d 547 (Colo.1991).

In *Poudre Valley*, however, the utility whose business had been excluded or supplanted by the municipality held such a franchise in the form of a certificate of public convenience and necessity granted by the Colorado Public Utilities Commission. Moreover, the statute which the court applied in that case to support the condemnation award specifically requires a payment of compensation when a municipality operates an electric utility and thereby injures a cooperative electric association that has "been granted *an exclusive service territory.*" Sec-

tion 40–9.5–201, C.R.S. (1993 Cum.Supp.) (emphasis added).

The supreme court emphasized in *Poudre Valley* that it was the rights associated with the certificate of public convenience and necessity that constituted the requisite property interest: "Both Poudre Valley's facilities and its right to serve customers *under the certificate of public necessity* are property for purposes of the takings clause." *Poudre Valley, supra,* 807 P.2d at 555 (emphasis added).

The courts of other states have also recognized that, in situations such as this in which a government entity enters into the water supply business and thus destroys or injures a private supplier, compensation need not be paid unless the plaintiff can demonstrate either that there has been a physical taking or a taking of a property right in the form of a governmentally conferred franchise. *See Amos Plumbing & Electric Co. v. Bennett,* 261 Ga. 810, 411 S.E.2d 490 (1992); *Water Development Co. v. Board of Water Works,* 488 N.W.2d 158 (Iowa 1992); *Alford v. City of Denton,* 546 S.W.2d 672 (Tex.Civ.App. 1977). *See also Knoxville Water Co. v. Knoxville,* 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353 (1906); *Skaneateles Waterworks v. Skaneateles,* 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585 (1902).

Clare has no vested property interest here, and his mere expectation of continuing business with his water customers does not constitute "property" for the purpose of an inverse condemnation claim.

I therefore conclude that there has been no "taking of property" within the contemplation of Colo. Const. art. II, § 15, and I would affirm the trial court's summary judgment in favor of the District.