HENDRY, Judge.
Appellant city seeks review of a final judgment entered in an eminent domain proceeding. No issue is taken by appellant over the amount of compensation awarded for the “taking”. Controversy centers around appellee’s counter-claim which resulted in a judgment against appellant for $30,594.05 and the award of costs and attorneys fees to appellee for their defense of the action and prosecution of the counter-claim.
The facts surrounding this controversy and the legal issues determined by the lower court involving the counter-claim of ap-pellee were succinctly set forth in the able trial judge’s order on motions for summary judgment. The well reasoned opinion of the trial judge is set out here in full:
“Each party has filed a motion for summary judgment with respect to the issues raised in the defendant’s counter-claim. These issues seek a declaration of defendant’s rights under two agreements between the parties pertaining to a public road crossing the defendant’s rail lines and damages for alleged breach of the agreement dated January 1, 1968.
“The parties have agreed to a stipulation of facts in support of their respective summary judgment motions, and the issues involved have been heard on this stipulation in lieu of formal trial thereof. The court has considered the agreed statement of facts, the memorandums of law and arguments of counsel, and makes the following findings and conclusions with respect to these issues.
“Prior to 1955 there was a street crossing in North Miami over the rail lines of the Florida East Coast Railway connecting N.E 131st Street with Arch Creek Road which ran parallel and adjacent to the east side of the railroad right-of-way. This crossing also served traffic on N.E. 16th Avenue which ran up to the right-of-way from the south. On January 3, 1955, the parties made an agreement whereby the *64 railroad agreed to build a passenger station near this crossing and the City agreed to close and irrevocably abandon the crossing.
“In 1967 the City wanted to reopen this crossing and offered to do so at its expense. A License Agreement dated January 1, 1968, provided for use of a fifty foot wide portion of the right-of-way by the City for the crossing. The City agreed to pay the entire expense of constructing the crossing, with the railroad performing the work of installing timber flangeways and automatic crossing protection devices consisting of flashing light signals, bells and gates which were to be synchronized with the City’s traffic signals. The City agreed to reimburse the railroad for its part of the work, and it was also agreed that the automatic crossing protection devices would be maintained by the railroad at the cost and expense of the City.
“After the railroad had obtained the crossing protection devices and was ready to begin work on the crossing, the City advised in May 1969, that its plans for the crossing had been changed and that it would be constructed along N.E. 16th Avenue rather than the location specified in the January 1, 1968 agreement. Thereafter the City refused to recognize the agreement as binding on it with respect to the new location and the parties being unable to agree in the matter, the City filed this action in eminent domain to condemn a crossing easement at the new location.
“The City sought an Order of Taking which was entered by Circuit Judge William K. Love on August 13, 1970, who at the same time denied the defendant’s Motion for Summary Judgment which sought to raise the issue regarding the applicability of the January 1, 1968 agreement to the crossing involved. However, Judge Love left for future consideration upon trial the right of the railroad to recover damages for breach of the contract.
“Thereafter the City requested the cooperation of the railroad in constructing the crossing and the railroad performed the work required of it by the said agreement which consisted of installing the timber flangeways and the automatic crossing protection devices.
“It is the opinion of the court that the City is bound by the terms of its agreement with the railroad regarding the cost of constructing the crossing and the future cost of maintaining the crossing protection equipment. The crossing site is at substantially the same location as the one specified in the agreement and there is language in paragraph 6 [1] of the agreement indicating an intention to cover any improvements made within 200 feet of the prescribed location. Furthermore, there has been no rescission or cancellation of the agreement by either party pursuant to the termination provisions in the agreement, and the City not only called on the railroad to perform its part of the construction but it has paid annually to the railroad the ten dollar consideration called for in the agreement. The City is estopped to deny liability for its obligations under the agreement.
“Counsel for the City has cited the case of Florida East Coast Railway Company v. Martin County, [Fla.1965] 171 So.2d 873 as authority for the proposition that the railroad is obligated to provide at its own expense the grade crossing and safety devices where a street crosses the railroad. The Martin County case however did not involve an agreement between the railroad and the condemning authority and only holds that a railroad may not recover such expense as a part of its damages for the condemnation of a crossing easement. Agreements of the kind involved here have *65 been upheld under Florida law (Florida East Coast Ry. Co. v. City of Miami [76 Fla. 277] 79 So. 682; Bennett v. City of Ft. Lauderdale [Fla.1955] 78 So.2d 567) and there are valuable considerations running to the City to support the reimbursement of a railroad for street crossing expenditures of the type required here. The railroad would not have been required by law to install at its expense the elaborate and costly crossing protection devices which the parties agreed were necessary at this crossing.
“Counsel for the City has also urged that the railroad may not recover for both the grade crossing expenses and for the easement which the City has acquired in this suit by condemnation. This contention lacks merit because the City was the party that ignored its obligation under the agreement involved and brought the condemnation suit to acquire an easement which it could have obtained by recognizing the agreement.
“Wherefore, it is ORDERED and ADJUDGED as follows:
“1. Plaintiff’s motion for summary judgment is DENIED.
“2. Defendant’s motion for summary judgment is GRANTED.
“3. The License Agreement between the parties, dated January 1, 1968 is a valid and binding agreement with respect to the crossing which has been constructed over the defendant’s right-of-way at N. E. 16th Avenue in the City of North Miami, and said agreement will govern the future operation and maintenance of the crossing until the agreement is terminated in the manner provided therein.
“4. The plaintiff is obligated to reimburse the defendant in the amount of $30,594.05 for the defendant’s expenses in connection with - the construction of said crossing. Said amount will be included in the final judgment to be' entered against the plaintiff, which judgment will include the jury verdict of $13,201.00 rendered against the City on trial of the condemnation issues.
“5. Further proceedings will be held to determine the allowance of the costs and attorneys fees which defendant is entitled to recover from the plaintiff herein, and for the entry of final judgment against the plaintiff.
“DONE and ORDERED at Miami, Dade County, Florida, this 5 day of July, 1972.”
Subsequently, the court awarded the appel-lee costs in the amount of $1,581.08 and attorneys fees of $6,900.00.
We have carefully considered the record and briefs of the parties in light of the controlling principles of law, and have concluded that no reversible error has been demonstrated. It is our opinion that the foregoing order of the trial judge sets forth a correct statement of the law and facts and that there was substantial competent evidence before him upon which he could have based those conclusions. The remaining points raised by appellant have been considered by us and found to be without merit.
Accordingly, for the reasons stated, the judgment appealed from is affirmed.
Affirmed.

. Paragraph G of the agreement provides:
“0. Second Party [the City] agrees to indemnify and hold harmless the Railway from assessments or other charges of any kind whatsoever against the Railway at any time for any portion of public improvements installed on or within 200 feet of said crossing or arising out of the existence of said crossing.”