CITY OF TEXARKANA, Texas,
Appellant,

v.

KITTY WELLS, INC., Appellee.

No. 8375.

Court of Civil Appeals of Texas,
Texarkana.

July 20, 1976.

Clayton Hutchins, City Atty., Robert M. Tharp, Asst. City Atty., Texarkana, for appellant.

John D. Raffaelli, Raffaelli & Hawkins, Texarkana, for appellee.

Opinion

CORNELIUS, Justice.

For the purpose of widening and reconstructing two streets, appellant City of Texarkana condemned .64 acres and took a temporary "working easement" over 25,406 additional square feet out of a 16.47 acre tract of land owned by appellee Kitty Wells, Inc. After objections to the award of the commissioners, the cause was tried before a jury which awarded appellee $83,196.00 for the land taken, including the temporary easement, and found that the remainder of appellee's land (a shopping center) had been diminished in value by $50,000.00 as a result of the taking.

Upon engaging in the widening and reconstruction project, the City required appellee to close two entrance driveways which opened onto one of the streets, and to relocate them so they would be aligned with corresponding entrances on the opposite side of the street.[1] Appellee introduced evidence of the costs it had incurred in relocating and reconstructing the entrances, as bearing upon the damages done to the remainder of its property.

---

1. The record does not reveal whether this action was required by ordinance or otherwise but it is conceded by both parties that the move was required by the City, and no complaint is made here of the means used by the City to accomplish that result.

Appellant contends (1) there was no evidence or insufficient evidence to support the jury finding of $50,000.00 damage to the remainder of appellee's property, and (2) the costs of relocating and reconstructing the entrances resulted from a valid exercise of the police power of the City in regulating traffic for the safety and convenience of the public, and are therefore not recoverable.

The basis of appellant's first contention is that appellee proved only the costs of relocating the entrances and of rebuilding its parking facility as a result thereof, and did not prove the market value of the remainder of its property immediately before and after the taking *or make any attempt to relate the relocation costs to market value.* We overrule this contention. The cost of relocating or reconstructing improvements cannot be recovered as separate and independent items of damages, but where by taking part of a tract the relocation or reconstruction of improvements is rendered necessary to the reasonable use and enjoyment of the remainder, and the burden of moving and reconstructing such improvements is cast upon the owner, then that burden, insofar as it depreciates the value of the land, is a proper element to be considered in estimating the damages. The land is depreciated in proportion to the expense, and the allowance is for the diminution in the market value of the land *in consequence of the burden thus cast upon it. State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 979 (1936, opinion adopted); *State v. Meyer,* 403 S.W.2d 366 (Tex.1966); *Sample v. Tennessee Gas Transmission Co.,* 151 Tex. 401, 251 S.W.2d 221 (1952); *Central Power & Light Company v. Martinez,* 493 S.W.2d 903 (Tex.Civ.App. Corpus Christi 1973, no writ); *State v. Bernhardt,* 334 S.W.2d 203 (Tex.Civ.App. Texarkana 1960, no writ); 2A Nichols, The Law of Eminent Domain, Sec. 6.45; 27 Am.Jur.2d, Eminent Domain, Sec. 314, p. 133. The jury found the value of the remainder of appellee's land immediately prior to the taking to be $4,045,480.00 and the value immediately after the taking to be $3,995,480.00, a diminution in value of $50,000.00. As we construe the testimony of the Witness A. P. Miller, he stated that all of appellee's land, exclusive of improvements, was on an average worth $1.50 per square foot at the time of the taking.[2] There were 689,690 square feet left in the remainder, which would make the highest estimate of its value, exclusive of improvements, $1,345,350.00. The highest value for the improvements (all of which were located on the remainder) was set at $3,000,000.00, making a total value of $4,345,350.00. Thus, the jury's finding of $4,045,480.00 for the value of the remainder immediately before the taking is well within the testimony. Appellee produced evidence that net expenses of $40,-357.95 were incurred by it in consequence of the required relocation and reconstruction of its entrances and parking facilities. Its evidence also showed that by reason of the necessity to allow an access driveway at one point on its property, appellee lost a building site valued at $48,000.00 where a 12,000 square foot building was planned to be built for leasing. Although appellant offered evidence that a smaller building, perhaps of 10,000 square feet, could still be built on that site, the jury was not required to accept that evidence, and even if it did, could still conclude that appellee had lost a substantial portion of the building site. Considering the evidence that $40,357.95 expenses were incurred in relocating and reconstructing the entrances and parking facilities, and that appellee lost all or a portion of the building site valued at $4.00 per square foot, the jury's answer that the market value of the remainder had decreased to $3,995,480.00 as a consequence of the burden cast upon it is well within the proof. These items of expense and loss were properly related to market value under the requirements announced in *State v. Carpenter,* supra, and the other authorities heretofore cited.

2. The valuation was by tiers, with a $4.00 per square foot value on the front tier, with decreasing valuations toward the rear of the property, with an overall or average value of $1.50 per square foot.

Appellant introduced evidence that the relocating of the entrances and driveways was required in order to alleviate a traffic hazard and to eliminate congestion. It contends this requirement was not a part of the taking by eminent domain, but was a valid exercise of the police power, and therefore the damages suffered as a consequence thereof are not recoverable.

■■■ Our Constitution provides in Article 1, Section 17, that:

"No person's property shall be taken, damaged or destroyed . . . or applied to public use without adequate compensation being made . . .."

At one time, however, Texas adhered to the rule that damages suffered as a result of regulations enacted as a lawful exercise of the police power were not recoverable. *City of San Antonio v. Pigenhole Parking of Texas,* 158 Tex. 318, 311 S.W.2d 218 (1958). But that rule has been severely criticized,[3] and our courts have now moved away from an emphasis upon technical distinctions between the exercise of police power and that of eminent domain, and toward the view that compensation should be allowed whenever there is such a substantial impairment or deprivation of one's property rights as amounts to a virtual taking. Indeed, our Supreme Court has on two occasions expressly rejected the police power argument. *San Antonio River Authority v. Lewis,* 363 S.W.2d 444 (Tex.1962); *Brazos River Authority v. City of Graham,* 163 Tex. 169, 354 S.W.2d 99 (1961). Moreover, it is settled that a material and substantial impairment of one's access as a result of the *construction of a public highway or other facility* is compensable even when a taking by eminent domain is not involved. *City of Waco v. Texland Corp.,* 446 S.W.2d 1 (Tex.1969). See also *City of San Antonio v. Olivares,* 505 S.W.2d 526 (Tex.1974), and *DuPuy v. City of Waco,* 396 S.W.2d 103 (Tex.1965). The relocation of the entrances and driveways here was required in connection with the City's widen-

ing and reconstructing a public street. In order to avoid the total loss of access, appellee was forced to conform its entrances and driveways to the requirements of the City. It thus appears that, without regard to the taking by eminent domain, the damages resulting therefrom would be recoverable under the rules applied in *City of Waco v. Texland,* supra.

In view of the disposition to be made of this case, it is not necessary that we pass upon appellee's cross-point. The judgment of the trial court is affirmed.

---

**3.** Stoebuck, The Property Right of Access Versus the Power of Eminent Domain, 47 Tex.L. Rev., No. 5, p. 733.