O'NEIL CORPORATION, Appellant,

v.

PERRY GAS TRANSMISSION, INC., et al., Appellees.

No. 9353.

Court of Appeals of Texas, Amarillo.

Jan. 31, 1983.

Rehearing Denied Feb. 18, 1983.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Booker, for appellant.

Sims, Hays & Lasley, Joe W. Hayes, M. Kent Sims, Canadian, Stokes, Carnahan & Fields, Thomas D. Farris, Amarillo, McCleskey, Harriger, Brazill & Graf, Mike Worley, Bill Harriger, Lubbock, for appellees.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

This appeal from a judgment rendered after a jury trial of consolidated condemnation and trespass actions presents the primary question of the proper wording of special issues, as well as the propriety of the trial court's exclusion of proffered testimony and disregard of jury answers. Although the jury submission was unorthodox, we affirm since the trial court's judgment is not erroneous for the reasons advanced on appeal.

O'Neil Corporation (O'Neil), the stock of which is equally owned by three brothers— Walter Lee O'Neil, Austin O'Neil, Jr. and Ted O'Neil—owns three sections of land, aggregating 1920 acres, in Collingsworth County. The land was leased from year to

year in 1978, 1979, and 1980 to Austin O'Neil, Jr. who paid annual rentals of $4,800, $4,800, and $7,400, respectively, to O'Neil, which leased the hunting rights thereon to other parties in the years 1976, 1977, and 1980.

In December of 1977, Perry Gas Transmission, Inc. (Perry Gas) began the planning and engineering of a pipeline system, which would traverse Collingsworth County, for the transmission of natural gas. Williams Brothers Engineering Company (Williams Brothers) contracted with Perry Gas to furnish engineering and construction management for the system, and to provide right-of-way acquisition service. Great Plains Construction Company, Inc. (Great Plains) was engaged by Perry Gas to string, weld and lay the pipe. Pipeline construction started on 30 May 1978 and, eventually, crossed a corner of the O'Neil land.

It was stipulated that Williams Brothers advised Great Plains that the right-of-way across the O'Neil property had been obtained, and that Great Plains was instructed by Williams Brothers to commence and continue construction of the pipeline across the O'Neil property. However, it was O'Neil's position that no one ever negotiated or obtained an easement that would authorize Perry Gas, Williams Brothers, or Great Plains to go onto its property.

The parties are agreed that Great Plains entered the O'Neil property on 9 June 1978 and cleared the right-of-way, which included the blading off of the grass, the building of fences, and the installing of gates. The pipe was laid out for welding on June 12, and a trench was dug on the 60-foot strip.

By June 29, the pipe had been welded, primed, wrapped, and coated. On that date, the pipe was lowered into the trench and covered, but because of a seam defect, the pipe was removed from the trench on August 23. However, sometime during August, Austin O'Neil, Jr. ordered the crews off the property, and work ceased on the O'Neil land at that time.

In the interim on August 7, Perry Gas initiated condemnation proceedings to secure an easement on and right-of-way over approximately 5.09 acres of the O'Neil land. On September 1, Perry Gas paid into the registry of the court $3,838, which was twice the $1,919 amount awarded by special commissioners for the condemnation, and was awarded, by the September 7 order of the court, possession of the condemned property pending a hearing on O'Neil's objection to the award of the special commissioners.

From the 9th through the 16th of September, new pipe was laid on the O'Neil land and, on September 17, the operation was completed. The next day, O'Neil amended its previously filed objection to the award of the commissioners, admitted the necessity for Perry Gas' acquisition of the easement, and filed its counterclaim against Perry Gas, Williams Brothers, and Great Plains for the pre-condemnation trespass, seeking both actual and exemplary damages.[1]

Evidence adduced before the jury included testimony that in order to reestablish the grass on the pipeline right-of-way, a 24-acre corner triangle, which included the five-acre right-of-way easement, was fenced at a cost of $1,000 to O'Neil to keep the cattle from killing the fresh grass. Austin O'Neil, Jr. gave testimony that as a result of the fencing, he lost the use of those 24 acres when his cattle were on the two northernmost quarters of the leased land, but that the O'Neil Corporation has not lost any lease money. Ted O'Neil testified that the 24-acre tract had been deleted from the last lease, but that the corporation would not necessarily have charged a greater rental if the tract had been included in the lease.

The appraisers agreed that the market value of the five-acre easement strip was $1,000 before the taking and $150 after the taking. The appraisers did differ as to

1. Great Plains and Perry Gas each filed a cross action against the other and against Williams Brothers, each seeking contribution and/or indemnity in the amount of any judgment rendered against it. The cross-actions were severed for a separate trial after the trial of O'Neil's action.

whether there had been a decrease in the market value of the remaining 1915 acres after the condemnation of the five-acre easement. Three appraisers called by O'Neil gave testimony of a decrease of from $15 to $20 an acre; the appraiser called by Perry Gas expressed the opinion that there was no reduction in the market value of the remainder.

Refusing requested special issues tendered by O'Neil, the court submitted O'Neil's actions to the jury on eight special issues. The issues and the jury's answers thereto are as follows:

### SPECIAL ISSUE NO. 1

What do you find from a preponderance of the evidence was the reasonable market value of approximately five acres of land within the easement strip across the O'Neil tract, considered as though there had been no prior injury or damage thereto, immediately before the same was condemned on September 7, 1978?

Answer in Dollars and Cents, if any.

Answer: $1,000.00 .

### SPECIAL ISSUE NO. 2

What do you find from a preponderance of the evidence was the reasonable market value of approximately five acres of land within the easement strip across the O'Neil tract, considered as though there had been no prior injury or damage thereto, immediately after the condemnation of the same on September 7, 1978, and burdened with the easement in question?

Answer in Dollars and Cents, if any.

Answer: $150.00 .

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence was the reasonable market value of the remaining part (consisting of 1915 acres of land) of the O'Neil tract of land not included in the easement strip, considered as though there had been no prior injury or damage thereto immediately before the condemnation of the easement on September 7, 1978?

Answer in Dollars and Cents, if any.

Answer: $383,000.00 .

### SPECIAL ISSUE NO. 4

What do you find from a preponderance of the evidence was the reasonable market value of the remaining part (consisting of 1915 acres of land) of the O'Neil tract of land not included in the easement, considered as though there had been no prior injury or damage thereto, immediately after the condemnation of the easement on September 7, 1978?

Answer in Dollars and Cents, if any.

Answer: $383,000.00 .

### SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that Perry Gas and/or Williams Brothers caused Great Plains to trespass on the land of the O'Neil Corporation between June 9, 1978, and September 7, 1978?

You are instructed in connection with this Special Issue that a trespass is committed if one enters or remains or causes another to enter or remain on the land of another without express or implied consent of the owner of the land or without the express or implied consent of one with apparent authority to give consent for the owner.

Consent may be inferred from the words or conduct of those from whom consent is sought and may include a failure to act or speak when a reasonably prudent person would have acted or spoken under the same or similar circumstances.

"Apparent authority" means such authority as one would reasonably believe another to have considering the words or conduct of those who deny the existence of such authority.

Answer "Yes" or "No" on each line below.

ANSWER: Perry Gas  Yes .

Williams Brothers  Yes .

If you have answered "Yes" to either or both subdivisions of Special Issue No. 5 ,

then answer the following Special Issue. Otherwise, do not answer Special Issue No. 6.

### SPECIAL ISSUE NO. 6

What sum of money, if any, do you find from a preponderance of the evidence should be awarded the O'Neil Corporation for actual damages sustained as a result of the trespass, if any, as you may have found in answering the foregoing questions.

In answering this question do not include any amounts for time expended by the O'Neil Brothers or their attorneys and do not include any amounts for inconvenience, litigation expenses or attorneys fees. In addition, do not include any amounts for any reduction in market value of the five (5) acre strip or the remainder of the O'Neil Ranch.

You may only consider any such amount as would reasonably compensate the O'Neil Corporation for the reduced rental value, if any, of the five (5) acre strip from June 9, 1978 to September 7, 1978.

Answer in Dollars and Cents or None.

Answer: _$3.13_ .

If you have answered either subdivision of Special Issue No. _5_ "yes" then answer the following Special Issue. Otherwise do not answer Special Issue No. _7_ .

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that the trespass of Perry Gas and/or Williams Brothers was done willfully and maliciously?

You are instructed that with respect to the foregoing issues "willfully and maliciously" means that Perry Gas and/or Williams Brothers went on or caused another to go on or remain on the land of the plaintiff knowing they were not authorized to do so implying a determination to enter regardless of legal rights and did so with malice, evil intent or with heedless and reckless disregard of the rights of others affected by it.

You are instructed that with respect to the foregoing instruction the term "heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care so as to indicate that the act or omission in question was a result of conscious indifference to the rights or welfare of the person affected by it.

You are instructed that if a person enters and/or remains upon the land of another in good faith, or causes another to do so in good faith, that is to say, with a mistaken belief that express or implied consent had been given to enter the land, then such conduct cannot be willful or malicious. "Good faith" means an honest belief.

Answer: Yes or No on each line below.

Answer: Perry Gas _Yes_

Williams Brothers _Yes_

If you have answered one or more subdivision of SPECIAL ISSUE No. _7_, "yes", then answer the applicable subdivision(s) of the following ISSUE No. 8 as to such Defendant or Defendants.

### SPECIAL ISSUE NO. 8

What sum of money, if any, do you find from a preponderance of the evidence that the O'Neil Corporation should be awarded as exemplary damages against the Defendant or Defendants as to which you have answered "yes" in any subdivision to SPECIAL ISSUE NO. 7.

"Exemplary damages" means an amount which you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount which may have been found by you as actual damages. In determining the amount of "exemplary damages" you may consider various elements and expenses which are not recoverable as direct or actual damages, including time expended, inconvenience, attorney's fees, and expense of litigation. You may also consider what amount would be sufficient to assure that a Defendant (or Defendants) does not profit from a wrongful entry upon the O'Neil property, the frequency of any such entries,

and what would be reasonably proportional to the purposeful conduct of the Defendant or Defendants.

Answer in dollars and cents, if any, as to each applicable Defendant.

| | | Answer |
|---|---|---|
| (a) | Perry Gas | $39,000.00 |
| (b) | Williams Bros. | $39,000.00 |

The court accepted the jury's verdict.

O'Neil moved for judgment on the verdict. Perry Gas then moved the court, inter alia, to disregard the jury's findings on special issues nos. 5, 6, 7, and 8, and to render judgment on the verdict. The reason given to disregard the issue no. 6 finding was that there is no competent evidence to support an affirmative response to issue no. 5, a prerequisite to the recovery of actual damages inquired about in issue no. 6. Williams Brothers filed a motion for, among other things, judgment notwithstanding the verdict, moving the court to disregard the jury's answer to special issues nos. 6, 7, and 8, and to render judgment. The reasons given to disregard the issue no. 6 answer were twofold: (i) there is no evidence to sustain any actual damages to the O'Neil Corporation, the lessor, as opposed to the damages of Austin O'Neil, Jr., the lessee, for the reasonable rental value of the land, and (ii) the $3.13 damages found are nominal damages of slight consequence and should be disregarded.

Considering all motions for judgment, the court, reciting that the jury's answers to special issues no. 6 and no. 8 are disregarded, rendered judgment. The judgment awards a permanent right-of-way and easement, described by metes and bounds, over, under and through the O'Neil property to Perry Gas, whose liability to O'Neil was adjudged to be the $850 found by the jury,

in answering special issues nos. 1 and 2, as the diminution in market value of the five-acre tract within the easement. The court further decreed that O'Neil take nothing from Williams Brothers and Great Plains.

Appealing, O'Neil presents three points of error. By the points, O'Neil charges that the trial court erred (1) in submitting special issues nos. 4 and 8 as worded and in failing to submit the proper measure of actual damages, (2) in excluding proffered testimony that 90% of the reduction in market value had occurred because of entries prior to September 7, and (3) in disregarding the jury's answers to special issues nos. 6 and 8 and in rendering judgment in favor of Perry Gas and Williams Brothers on the trespass cause of action.[2]

Under its first point, O'Neil initially contends that the trial court, by misconstruing and misapplying *Alexander v. City of San Antonio,* 468 S.W.2d 797 (Tex.1971), erroneously included the *Alexander* phrase, "considered as severed land and as though there had been no prior injury or damage thereto, if any, by the condemnor," in special issue no. 4. Secondly, O'Neil observes that the court expressly instructed the jury that its answer to special issue no. 6, the trespass issue, is not to include any amount for reduction in market value either to the portion taken or to the remainder. The phraseology and instructions, O'Neil argues, forced the jury to disregard the effect of the pre-condemnation trespass on the value of the remainder of its property and, by causing the jury to look at the effect of the condemnation on the remainder without regard to the pre-condemnation trespass, left O'Neil without any compensation for trespass damages to the remainder of its property.[3]

2. In addition to responding by counterpoints, both Perry Gas and Williams Brothers have filed cross-points to challenge the jury's answers to the special issues submitting the exemplary damages question; but, since the cross-points are positioned for consideration only if the trial court's judgment is not affirmed, we do not address the cross-points.

3. We record, without direct comment, O'Neil's argument that the proper submission to allow recovery of compensation for the effects of the pre-condemnation trespass to the remainder would have been its requested, but refused, issue no. 4, which omitted the *Alexander* phrase, and its requested, but refused, issue no. 5, which would have required the jury to find the percentage of difference, if any, in its monetary answers to issues no. 3, as submitted, and

At the outset, it is important to notice that O'Neil does not complain of a lack of compensation for any injury to the land taken for the easement caused by the pre-condemnation trespass on that tract. Its sole contention under its first point of error is that the wording of special issues nos. 4 and 6 prevented it from receiving compensation for the effect of the pre-condemnation trespass on the portion taken to the remainder of its property.

■ Although we do not fully agree with all aspects of the jury submission, the submission about which O'Neil complains was not erroneous. Contrary to O'Neil's contention, it was neither the phrasing of issue no. 4 nor the instruction in issue no. 6 that prevented O'Neil from receiving any compensation for damage to the remainder as a result of the trespass on the portion taken; the law itself excludes the jury's consideration of evidence of pre-condemnation trespass on the portion taken in determining the diminution in value, if any, of the remainder of the property. *Alexander v. City of San Antonio, supra,* at 799.

Explanatorily, these consolidated causes were positioned as the ordinary and uncomplicated condemnation case of the "taking" of a portion of ranch land for a right-of-way easement and the leaving of a remainder which was claimed by the landowner to have diminished in value because of the taking, together with the landowner's claim of injury to the land as a result of the condemnor's pre-condemnation trespass on the portion taken. In this situation, *Alexander v. City of San Antonio, supra,* at 800, prescribes that the landowner may recover full redress for damages for both the trespass and the condemnation in one trial.

■ To permit recovery of the pre-condemnation trespass damages to the portion taken, evidence of injury to the land resulting from the trespass is admitted. Then, by modifying the usual special issue on the value of the portion taken immediately before condemnation with the phrase "considered as severed land and as though there

had been no prior injury or damages thereto, if any, by the condemnor," the jury is allowed to value the land taken without regard to any injury because of the trespass. *Id.* at 799–800. It follows that by the submission of the usual special issue on the value of the land taken immediately after condemnation, the jury is allowed to value the land taken in its present condition. Thus, the difference between the before- and the after-taking values provides full compensation to the landowner both for any diminution in value caused by the trespass and for the taking itself, thereby eliminating the need for a separate issue to determine trespass damages.

Given this submission to provide the landowner full compensation for the wrong and the taking, the evidence of the injury resulting from the trespass on the land taken should not be considered by the jury in arriving at damages to be awarded for diminution in value, if any, for the remainder of the ranch property resulting from the taking of the five-acre tract. The reason is that damages to be awarded for diminution in value of the remainder is limited by Texas Revised Civil Statutes Annotated art. 3265, § 1 (Vernon 1968), to those damages "by reason of the condemnation of the property, and its employment for the purpose for which it is to be condemned." *Alexander v. City of San Antonio, supra,* at 799.

Notwithstanding, in the actual submission of these causes, the court incorporated its adaptation of the *Alexander* phrase in both special issues nos. 1 and 2, thereby excluding from the jury's consideration of the pre- and post-taking values of the five-acre tract any diminishment in value because of the pre-condemnation trespass on that tract. The court then included in its submission the special issue no. 6 inquiry as to any actual damages sustained by O'Neil because of the pre-condemnation trespass, but the court specifically excluded from the jury's consideration, among other matters, any reduction in market value of the five-acre strip because of the trespass. Conse-

no. 4, as requested, that was proximately

caused by the pre-condemnation trespass.

quently, there was no jury determination of the diminution in market value, if any, of the five-acre tract as a result of the trespass found; nevertheless, O'Neil does not complain on appeal of this part of the submission or its consequences.

■ Rather, O'Neil, accepting the correctness of special issue no. 3, the before-taking valuation of the remainder issue, with its inclusion of the adapted *Alexander* phrase, contends that the jury erroneously was told not to consider any trespass damages when finding the value of the remainder by the inclusion of the adapted *Alexander* phrase in special issue no. 4, the after-taking valuation of the remainder issue, and by the instruction in special issue no. 6, the trespass damage issue, not to include any amount for any reduction in market value of the remainder of the ranch. The contention is not well taken.

As explained, O'Neil was not entitled to have the evidence of injury resulting from the trespass on the tract taken to be considered by the jury in arriving at damages to be awarded for diminution in value of the remainder of the ranch resulting from the taking of the five-acre tract. *Id.* at 799. Thus, although the *Alexander* phrase was not designed for inclusion in the usual special issues inquiring of the before- and after-condemnation valuations of the remainder—an instruction suffices to advise the jury of the limited purpose for which the trespass evidence was admitted, *Id.* at 800— we cannot fault the trial court for including the adapted *Alexander* phrase in both special issues nos. 3 and 4, or for its instruction in special issue no. 6, to inform the jury not to consider the trespass evidence in arriving at the before- and after-taking values of the remainder of the ranch. Under Rule 277,[4] the trial court, knowing that there is more than one fair way to try a case, is vested with wide discretion in formulating its jury charge. J. Pope and W. Lowerre,

*The State of the Special Verdict—1979,* 11 St. Mary's L.J. 1, 55 (1979). We detect no abuse of the court's discretion in its formulation of this portion of the court's charge. The first point of error is overruled.

■ O'Neil's second-point contention is that the court erred in not permitting one of O'Neil's appraisers to testify on direct examination that 90% of the decrease in market value of the remainder had occurred prior to September 7, the date Perry Gas was awarded possession of the five-acre strip, as a result of the pre-condemnation trespass. Because, as we have just written, the evidence was inadmissible for the purpose offered, the court did not err in refusing the offer. And yet, notwithstanding the court's ruling, the essence of the testimony O'Neil contends was erroneously excluded was adduced from the witness on cross-examination. The second point is overruled.

In charging the court erred in disregarding the jury's answers to special issues nos. 6 and 8 and in rendering judgment in favor of Perry Gas and Williams Brothers on the trespass action, O'Neil presents a two-step approach. O'Neil says, first, that the jury correctly answered $3.13 to the special issue no. 6 inquiry as to actual damages for the trespass and, second, that it, as the owner, has the right to recover those damages for trespass, even though Austin O'Neil, Jr., the lessee, was not a party to either the condemnation or the trespass causes of action.

We agree with O'Neil that the jury, strictly following the court's instruction in special issue no. 6 to consider only the reduced rental value of the five-acre strip from June 9 to September 7 in awarding actual damages sustained as a result of the trespass, accurately calculated $3.13 to be the sum.[5] However, although we generally are in accord with O'Neil's statements that a landowner may recover damages for trespass and that both the lessor and the lessee

---

4. All citations of numbered rules are referenced to the Texas Rules of Civil Procedure.

5. As O'Neil mathematically demonstrates, the $4,800 annual cash rental Austin O'Neil, Jr. paid to lease O'Neil's 1920 acres during the

time of the trespass and condemnation equals $2.50 an acre, which computes to exactly $3.13 for the five-acre strip for the one-fourth of the year inquired about.

are entitled to share in the award of damages for trespass according to their interests, we disagree that O'Neil has the right to recover the $3.13 as actual damages for the trespass.

As submitted, special issue no. 6 inquired about the actual damages sustained by the O'Neil Corporation as a result of the trespass, but the jury's determination was limited to the reasonable reduced rental value of the five-acre strip for the three-month period specified. It is undisputed that Austin O'Neil, Jr., the lessee, lost the use of the rental value of the strip; it is equally undisputed that O'Neil suffered no loss of rental, or rental value, because of the trespass.

We have no quarrel with O'Neil's argument that it has a valuable interest in the physical integrity of the property, such as the health and well-being of the soil, grass and fences; yet, although there was testimony that, because of the trespass, the strip was reseeded and a 24-acre triangle was required to be fenced at a cost of $1,000 to O'Neil to reestablish the grass, none of the items O'Neil lists was included as an element of damage in the special issue no. 6 inquiry. And on appeal, the issue has not been challenged by O'Neil because of its omission of any element of damage.

In spite of the foregoing, O'Neil advances two other arguments why it is entitled, as the basis for recovery of the exemplary damages found by the jury, to the benefit of the actual damages sustained by its lessee. First, O'Neil maintains that Austin O'Neil, Jr.'s absence as a party plaintiff to the trespass cause was waived because, in essence, Perry Gas did not make him a party to the condemnation action, and there was no complaint of his non-party status until Williams Brothers filed its motion for judgment asserting that there is no evidence to sustain any actual damages to O'Neil, as opposed to Austin O'Neil, Jr. as lessee, for the reasonable rental value of the land. Second, O'Neil proposes that any doubt about the absence of Austin O'Neil, Jr. as a party plaintiff was removed by his assignment of his cause of action to O'Neil subsequent to the receipt of the jury's verdict and the filing of Williams Brothers' motion for judgment but before judgment actually was rendered. We are not persuaded by the arguments, primarily because O'Neil has misperceived the consequences arising from the posture of each cause of action.

■ Because both the lessor and the lessee are entitled to share in the award for condemnation according to their respective interests, *Colley v. Carleton,* 571 S.W.2d 572, 574 (Tex.Civ.App.—Corpus Christi 1978, no writ), Perry Gas, in initiating the condemnation proceedings, should not only have made the owner of the land a party, which it did, but should have made Austin O'Neil, Jr., the lessee, a party, which it did not do. *Taylor v. Catalon,* 140 Tex. 38, 166 S.W.2d 102, 105 (1942). When O'Neil initiated its action to recover damages for the pre-condemnation trespass, it did not include Austin O'Neil, Jr. as a party plaintiff. After the undisputed evidence established that Austin O'Neil, Jr. was the lessee, neither any party nor Austin O'Neil, Jr. moved to abate the suit pending his joinder or to apportion any damages. Under these circumstances, the absence of Austin O'Neil as a party litigant did not prevent the court from adjudicating the causes between the litigants who were parties to the actions. *Isenhower v. Bell,* 365 S.W.2d 354, 359 (Tex. 1963).

With the causes of action so postured, Perry Gas waived the right to have all damages adjudicated in the actions, thereby subjecting itself to another suit by Austin O'Neil, Jr. for any damages he sustained. But such waiver could not, and did not, vest O'Neil with title to the entire causes of action or to the right to recover Austin O'Neil, Jr.'s interest; the waiver merely operated to allow O'Neil to prosecute for the damages owned by it. *Id.*

Having admitted the necessity for Perry Gas' acquisition of the easement, O'Neil had the burden of proving its damages in the condemnation action for its interest in the value of the property taken and in the diminution in value, if any, of the remainder. *State v. Walker,* 441 S.W.2d 168, 170

(Tex.1969). As plaintiff seeking damages for the trespass, O'Neil had the burden of proving its damages. In both proceedings, O'Neil sought only the damages alleged to have been sustained by it—it did not plead the interest of Austin O'Neil, Jr. in its petitions—thereby limiting its recovery to its proven damages. *Hicks v. Southwestern Settlement & Develop. Corp.,* 188 S.W.2d 915, 921 (Tex.Civ.App.—Beaumont 1945, writ ref'd w.o.m.). It is axiomatic that the judgment must conform to the pleadings, Rule 301, and that a party cannot recover through a right not asserted. *Starr v. Ferguson,* 140 Tex. 80, 166 S.W.2d 130, 132 (1942).

■ Inasmuch as Austin O'Neil, Jr. was not a party litigant, his rights could not be adjudicated, *Taylor v. Catalon, supra,* at 105; therefore, his assignment of his cause of action to O'Neil after the trial of the causes to which he was not a party does not permit O'Neil to recover any damages sustained by Austin O'Neil, Jr., for the assignment amounts to no more than the assignment of an unadjudicated cause of action. Further, even if, as O'Neil implies, it is somehow a co-tenant with Austin O'Neil, Jr., O'Neil still is not the representative of its lessee and it cannot recover the damages sustained by Austin O'Neil, Jr. *Rowland v. Murphey,* 66 Tex. 534, 1 S.W. 658, 660 (1886); *Hicks v. Southwestern Settlement & Develop. Corp., supra,* at 925.

■ It follows that there is no evidence that O'Neil sustained the actual damages found by the jury in answering special issue no. 6. Absent any evidence to support the finding, the court was authorized to, and did, disregard the finding. Rule 301; *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex. 1967). Since an award of exemplary damages cannot stand in the absence of a finding of actual damages supported by the evidence, even though a trespass was committed, the court correctly disregarded the special issue no. 8 findings of exemplary damages. *Phillips v. Wertz,* 546 S.W.2d 902, 907 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). The third point of error is overruled.

The trial court's judgment rendered on the record before us is not vulnerable to the appellate contentions made by O'Neil. Accordingly, the judgment is affirmed.