**Hazel GULLY, Plaintiff-Appellee,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant-Appellant.**

**No. 84–1842.**

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1985.

Phillips, Neal & Woods, Travis R. Phillips, Jo Ann Mercia, Austin, Tex., for plaintiff-appellee.

Before RANDALL, DAVIS and HILL, Circuit Judges.

## OPINION

RANDALL, Circuit Judge.

In 1978, Hazel Gully acquired a piece of property to which Southwestern Bell Telephone Company had been granted an easement. As provided for in the easement deed, Bell had placed a communications cable at the edge of the property. The cable was in place in 1981 when Gully, who was in the midst of planning to build a commercial office facility on the property, discovered it, together with Bell's easement. As she was entitled to do under the terms of the easement deed, Gully asked Bell to remove the line. Bell delayed and then refused. Gully sued for declaratory relief, and Bell later cross-claimed for condemnation in the event that Gully's claim to title was good. The title issue being resolved in Gully's favor, Bell exercised its eminent domain power and condemned a portion of Gully's property. A jury awarded Gully $62,100 for the value of the land condemned by Bell, and also awarded her $92,000 for damages sustained during the period before Bell moved to condemn the property. Bell appeals. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND.

Bell entered into an agreement in 1953 with John and Clara Vaught whereby, in exchange for nominal consideration, Bell received an easement and permission to lay a communications cable at the edge of the Vaught's property on West Ninth Street in Austin, Texas. The instrument which granted Bell access to the property also provided, however, that in the event that four specified conditions were met,[1] Bell

G. Michael Lawrence, A. Don Emory, Austin, Tex., for defendant-appellant.

---

1. An addendum to the easement provided that "after receipt of ninety (90) days written notice from Grantor and upon" the satisfaction of four conditions, "Grantee agrees to remove the lines ... and relocate [them] along the northern line of West Ninth Street...." The four conditions were that (1) West Ninth Street be cut through and extended west of West Avenue, (2) the property be zoned commercial, (3) the Grantee's easement interfere with the construction of a

would be required, upon 90 days notice from the owner of the land, to remove its lines and relocate them.

Hazel Gully acquired the land hindered by this easement in 1978. Unbeknownst to her, Bell had indeed buried beneath her property a communications line which serves much of Austin with its long distance connections to the outside world. Since Gully intended to develop an office project on the land, she consulted with an architectural firm early in 1981 and then hired an architect in April of 1981 to develop plans. When the plans were some 80–90 percent complete, Gully's architect discovered what Gully knew not: that Bell had laid a telephone conduit at the edge of the property on West Ninth Street. Gully then apparently located the easement agreement. When the architect informed her that the cable interfered with their plans, Gully gave Bell written notice on December 2, 1981, that the easement deed's four conditions had been met and that Bell was therefore obligated to relocate its lines within 90 days.[2]

What happened next is a bit confusing. Bell disputed initially (and then at trial) that the four conditions in the deed had truly been satisfied. Yet Bell, at some point shortly after receiving the initial communication from Gully, agreed to move the cable. Upon further investigation, however, Bell discovered that to do so would prove very costly. Bell therefore informed Gully in January, 1982, that the cable would remain. On February 24, 1982, Gully filed a petition in state court seeking declaratory relief; she requested a construction of the easement agreement with Bell and, more specifically, a declaration

that the requisite conditions had been met and that Bell was accordingly obligated to move.

In the meantime, the 90 day period had continued to run. As a result, if the deed's four conditions had in fact been met, Bell was technically in breach of its agreement with Gully as of March 2, 1982. A month later, on April 2, 1982, Bell filed its answer to Gully's complaint and also removed the case to federal court.[3] Bell's answer argued primarily that not all of the four conditions in the easement deed had been satisfied and that Bell was consequently under no duty to relocate its cable. Seven months later, on November 15, 1982, Bell requested leave to file a counterclaim to condemn the property[4] and simultaneously filed its counterclaim for condemnation. Bell planned to exercise its statutory eminent domain power only if the title dispute was resolved in Gully's favor. Gully's response to Bell's condemnation petition denied that Bell had statutory authority to condemn the land for the purpose of laying underground phone lines and also asserted that even if Bell did have such authority, it had waived its condemnation rights by the terms of the easement agreement.[5]

At trial, Gully sought to recover, and did recover, upon two different grounds. First, she sought compensation for the market value of the land taken by Bell in accordance with its power of eminent domain. As compensation, she received $62,100. Second, Gully argued that Bell had breached the easement agreement and that as a result of that breach she had incurred various costs. The jury rendered for Gully a judgment of $92,000 in contract damages.

---

commercial building, and (4) the Grantees be able to obtain permission from governing authorities (with respect to relocation of the cable).

Bell disputed that the conditions had been satisfied. See, e.g., Bell's brief at 6–7. This issue was resolved in Gully's favor at trial.

**2.** See supra note 1.

**3.** The case was removed on the grounds of diversity; Bell is a Missouri corporation.

**4.** This motion was finally granted on February 17, 1983.

**5.** These contentions were subsequently withdrawn. Gully stipulated at trial that Bell did have eminent domain authority to condemn the easement.

Bell appeals both awards.[6] With respect to the condemnation award, Bell maintains that the district court erred in finding that the date of taking was March, 1984, instead of March, 1982.[7] With respect to the contract damages, Bell insists that any award at all constitutes a double recovery for Gully and should therefore be overruled.

## II. DATE OF TAKING.

■ The jury found that the fair market value of the land Bell condemned was $38,-832 on March 2, 1982—the date on which Bell was technically in breach of the easement agreement. The jury also found that the value of the land was $62,100 in March, 1984—the date of the trial in which Bell's petition for condemnation was effectively granted.[8] Bell argues that the "taking" occurred in March, 1982, and that the judge should therefore have awarded Gully only $38,832 as compensation. We disagree.

It is well settled in Texas that the compensation due a landowner for property taken by eminent domain is measured by the fair market value of the land at the time of the taking. *See, e.g., City of Fort Worth v. Corbin*, 504 S.W.2d 828, 830 (Tex. 1974). The debate in this case concerns the time of the taking. Under Texas law, the date of taking "is the date upon which the condemnor *lawfully* takes actual possession or ... takes constructively by a deposit of the special commissioners' award." *Corbin*, 504 S.W.2d at 830 (emphasis added). The reference to the commissioners' award refers to the procedure whereby the condemnor, in order to gain access to the property prior to the final resolution of the condemnation proceeding, deposits as security for the condemnee an amount preliminarily set by the special commissioners as the fair market value of the land. *See,*

*e.g., City of Houston v. Adams*, 154 Tex. 448, 279 S.W.2d 308, 313 (1955).

Bell maintains that it was not required to make a security deposit in this case because it proceeded under Article 3269,[9] which allows potential condemnors both to try title and, in the alternative, to institute condemnation proceedings in the same litigation. In other words, Bell is permitted, as it did here, to assert title to the property and, at the same time, file a petition for condemnation in the event that the title issue is resolved against it. *See, e.g., Adams*, 279 S.W.2d at 312–13; *Texas Electric Service Company v. Linebery*, 333 S.W.2d 596 (Tex.Civ.App.—El Paso 1960). Furthermore, Bell claims that when a condemnor utilizes Article 3269 to plead inconsistent pleadings, it (the condemnor) is not required to make a security deposit absent a request from the potential condemnee for injunctive relief. Consequently, Bell concludes, since it is not required under the statute to deposit security, the date of taking cannot be made to turn on the date of a non-required deposit.

■ Though not without some appeal, Bell's argument slightly misses the point. The question is not whether Bell was *required* to deposit an amount equal to the market value of the land as security; the question is whether, in the absence of such a deposit, Bell's possession of the easement as of March 2, 1982, was lawful. Bell's possession was not lawful because Bell cannot "take until it has paid or secured compensation." Tex. Const. art. I § 17; *Brazos River Conservation & Reclamation Dist. v. Costello*, 135 Tex. 307, 143 S.W.2d 577, 579–80 (1940); *Ruby*, 15 S.W. at 1041. This is true notwithstanding the

---

6. The parties do not contest on this appeal the district court's award of attorney's fees to Gully.

7. The jury found that the value of the land condemned by Bell was worth significantly more in March, 1984, than it was in March, 1982. The award to which Gully is entitled depends upon the date of the condemnation. *See infra* Part II.

8. Where the condemnor has not deposited security with the court, then, for purposes of valuing the land, the relevant date is the date of trial. *See San Antonio & A.P. Ry. Co. v. Ruby*, 80 Tex. 172, 15 S.W. 1040, 1041 (1891).

9. Tex.Rev.Civ.Stat.Ann., art. 3269 (Vernon 1984). Effective January 1, 1985, Article 3269 was repealed and recodified at §§ 21.003, 21.-017, 21.064 of the new Texas Property Code.

fact that Bell was in possession of the condemned property prior to the condemnation proceeding. *See Texas Western Ry. Co. v. Cave*, 80 Tex. 137, 15 S.W. 786 (1891). Had Bell wanted to make a security deposit, and thereby constructively "take" the land as of the date of that deposit, it was entitled to and could have done so. *See, e.g., Adams*, 279 S.W.2d at 311, 313–14; *Linebery*, 333 S.W.2d at 600.[10] It would have been necessary for Bell to ask the court to set the amount of security due, but Bell simply made no attempt in this case to do so. Consequently, although Bell's conduit remained on Gully's property throughout the pendency of this dispute, Bell did not *lawfully* occupy the property until March, 1984. Prior to the lawful condemnation, and subsequent to March 2, 1982, Bell was a trespasser, and it will not be permitted to profit from its own trespass by taking advantage of the lower value of the property as of March, 1982. *Cf. Alexander v. City of San Antonio*, 468 S.W.2d 797, 800 (Tex.1971).[11] The *legal* date of taking was March, 1984,[12] and the value of the property condemned was correctly computed as of that date.

### III. THE CONTRACT.

 Gully believed that she had an agreement with Bell. Bell disputed Gully's contention that the conditions in the deed had been met, but Bell did not contest the validity of the agreement itself.[13] Treating the easement deed as a bilateral contract between herself and Bell,[14] Gully relied upon Bell to fulfill its contractual obligations. It is true that Bell's power of eminent domain is conferred by statute, and that it is contrary to public policy to enforce contracts which attempt to abrogate an entity's eminent domain authority.[15] But Gully does not contest Bell's right to condemn this property.[16] Indeed, had Bell condemned it as early as March, 1982, Gully would have suffered no damages from her reliance on this deed since Bell would, in effect, have supplanted the deed with its power of eminent domain— meaning that Gully would have had nothing upon which she could justifiably rely. Bell, however, began by telling Gully that the line would be relocated. Bell then changed its mind. Then Bell delayed. Finally Bell got around to condemning the easement. During the interim, Gully was unable to go forward with the construction project, yet she was unwilling to abandon it since she still believed—and not without reason—that Bell might move. Time is money, and the jury believed that the time Gully spent waiting for Bell to do something cost her $92,000.

 Bell does not object specifically to the amount of the jury award. Rather,

---

10. In both *Adams* and *Linebery*, the condemnor did as Bell has done here: utilize Article 3269 to claim title and, alternatively, condemn. In both cases, however, the condemnors protected themselves as Bell did not: by asking the court to set the amount of required security and then depositing that amount.

11. In *Alexander*, the value of the condemnee's property declined as a result of the damage inflicted to the land by the trespasser during the trespass. The case is thus distinguishable factually from the one at hand, but the principle for which it stands is equally applicable here.

12. We also note that a mere *announcement* of condemnation does not alone constitute a taking. There must be an actual or constructive taking of the property. *See, e.g., Thurow v. City of Dallas*, 499 S.W.2d 347, 348 (Tex.Civ.App.— Dallas 1973, writ ref'd n.r.e.).

13. *See, e.g.*, 4 Record at 442–44.

14. Bell has never contested Gully's claim that its right to the easement on this property was a right conferred by contract, and Texas courts do indeed treat and interpret easement deeds as they do other contracts. *See, e.g., Lawyers Trust Company v. City of Houston*, 359 S.W.2d 887 (Tex.1962); *Saunders v. Alamo Soil Conservation Dist.*, 545 S.W.2d 249 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.); *Melder v. Phillips Pipe Line Co.*, 539 S.W.2d 208 (Tex.Civ.App. —Austin 1976, writ ref'd n.r.e.); *Premier Petroleum Co. v. Box*, 255 S.W.2d 298, (Tex.Civ.App.) *writ ref'd n.r.e.*, 257 S.W.2d 105 (Tex.1953).

15. This point was acknowledged by Gully at oral argument. *See, e.g., Fidelity Land & Trust Co. of Texas v. City of W. Un. Place*, 496 S.W.2d 116 (Tex.Civ.App.—Houston 1973, writ ref'd n.r. e.).

16. *See supra* note 5.

Bell's central claim is that the contract damages, coupled with compensation for the value of the land, represent a double recovery for Gully: a double award for the same injury. This contention ultimately rests on the premise that in a condemnation case, all the damages awarded to the condemnee are to be calculated in terms of the diminished value of the land taken.[17] Bell concedes that other costs borne by the landowner may be taken into account in setting the amount of the condemnation award, but these other costs are to be figured into the determination of the market value of the land. *See, e.g., City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176 (1951). Thus, for example, a landowner and businessman who loses, as a result of eminent domain, both the land upon which his business rests as well as the business itself may be compensated both for the market value of the land and for profits he will not be able to recoup upon relocation. *See, e.g., Hart Bros. v. Dallas County,* 279 S.W. 1111 (Tex.Comm. App.1926, opinion adopted); *City of La-Grange v. Pieratt,* 142 Tex. 23, 175 S.W.2d 243 (1943). Perhaps more in line with this case (since Gully's office complex was only in the design phase), a landowner who is compelled by an eminent domain taking to redesign or restructure improvements already erected on the taken land may have the costs of redesign figured into the valuation of the land acquired by the taking. *See, e.g., City of Texarkana v. Kitty Wells, Inc.,* 539 S.W.2d 205 (Tex.Civ.App.—Texarkana 1976).

As of March 2, 1982—the date Bell's right to occupy the property in accordance with the easement deed expired—Bell was a trespasser on Gully's land. Whether or not Bell truly believed it had a right to remain (i.e., whether Bell's claim to title was asserted in good faith), the jury determined that under the terms of the deed Bell was obliged to move. Bell's response is that by remaining on Gully's property, it constructively "took" Gully's land as of the date of trespass, March 2, 1982; but as we have indicated in Part II, *supra,* Bell did not lawfully take the property until March, 1984. For the two year period from March, 1982, until March, 1984, therefore, Bell was a trespasser.

Gully nevertheless elected to proceed with her claim for contract damages instead of trespass damages. Bell's answer is that these two claims, no matter how they are labelled, are essentially the same. They are the same, says Bell, because they reflect a single injury: the injury which Gully suffered while Bell was trespasser from March, 1982, until March, 1984. Furthermore, Bell continues, damages occasioned by pre-condemnation trespass are, like consequential damages to a business which are occasioned by an ordinary taking, to be considered in a single proceeding to determine the effect of the trespass on the fair market value of the land. *See, e.g., Glade v. Dietert,* 156 Tex. 382, 295 S.W.2d 642 (1956); *see generally O'Neil Corp. v. Perry Gas Transmission, Inc.,* 648 S.W.2d 335, 341 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). One reason for consolidating the damages which result from pre-condemnation trespass with those which are a consequence of the taking itself is purely economical: It saves time and expense to litigate everything at once. *See, e.g., Glade,* 295 S.W.2d at 646. In addition and more generally, the damages are to be computed singularly because the real harm done by trespass is simply the harm done by a taking except that no legal taking has yet occurred. *See, e.g., Alexander v. City of San Antonio,* 468 S.W.2d 797 (Tex. 1971); *O'Neil,* 648 S.W.2d 335. Accordingly, when a trespass prior to condemnation does no injury to the land, the landowner is not entitled at the eminent domain proceeding to additional compensation merely because a trespass occurred. *See, e.g., Linebery,* 333 S.W.2d 596. Similarly, when a pre-condemnation trespass increases the value of the land which is subsequently taken, the landowner is not entitled to take advantage of this windfall; the owner generally gets the land value at the time of the

---

**17.** *See* Bell's brief at 12–13; *see also infra* note 19 and accompanying text.

trespass (unless, of course, the appreciation in the value of the land in between the date of trespass and the date of condemnation is not a result of the trespass). *See, e.g., Corbin*, 504 S.W.2d at 830. Likewise, when a pre-condemnation trespass *diminishes* the value of the land subsequently taken, the landowner is entitled to recoup the fair market value of the land as it stood *prior* to the trespass; the trespasser, in other words, is not permitted to benefit from his own wrong. *See, e.g., Texas Western Ry. Co. v. Cave*, 80 Tex. 137, 15 S.W. 786 (1891); *Alexander*, 468 S.W.2d 797.

But this is not a case about trespass. If Bell had merely been in trespass, Gully would presumably have done something. She would have realized that Bell would eventually condemn the land; perhaps she would herself have initiated an inverse condemnation action. *See, e.g., City of Abilene v. Burk Royalty Company*, 470 S.W.2d 643 (Tex.1971). This is not a case about trespass, however, because Gully's purported injury, and the basis of the $92,000 jury award for damages,[18] was a result of her reliance on an agreement she had with Bell. In ordinary trespass, where there is no mutual understanding, there can be no reliance at all; where a contractual agreement is in the picture, there is. And it was due to contractual reliance that Gully suffered these damages. Bell's argument therefore rests on a misapprehension of the nature of Gully's claim and the basis for the damage award. It is simply not responsive to the point that

*because of the contract*, she relied on Bell to act. It was not the existence of the cable per se which inflicted the damage; it was Bell's behavior. Bell's agreement to move, followed by its ostensible change of heart, followed by delay, and followed finally by a petition for condemnation left Gully in an insecure and costly lurch. While waiting to see whether Bell would act as it had promised, she abandoned her production schedule, spent money to maintain unimproved land, and was forced to borrow more money at a significantly higher rate of interest. None of this would have happened if Bell had either complied with the terms of the agreement or exercised its condemnation power in March, 1982 (or before).[19]

Given the nature of Gully's injury, it is perhaps inapt to characterize this entire litigation, as Bell is wont to do, as a "condemnation proceeding."[20] Mrs. Gully initiated these proceedings, and they began as an effort by her to have the easement deed construed and her rights under the deed declared. It is unquestionably within the power of the property owner who has been injured by one who has condemnation authority but who has not exercised that authority to seek money damages occasioned by the non-taking. *See, e.g., City of Austin v. Casiraghi*, 656 S.W.2d 576, 579–80 (Tex.App.—Austin 1983). Even if this entire litigation be deemed an eminent domain proceeding, however, Gully retains her right to recover damages for a separate cause of action growing out of contract. Indeed, by entering into this agree-

---

**18.** That the basis of the jury's award for contract damages was the delay Gully suffered while she waited for Bell is not denied by Bell and is further buttressed by the jury's additional finding that neither the taking nor the trespass caused any consequential damage to the value of the remainder of the property. *See* 1 Record at 167–68; *cf. Linebery*, 333 S.W.2d at 600.

**19.** Gully's right to rely on this agreement is something Bell has not challenged either at trial or on this appeal. We observe nevertheless that Bell's intention to condemn this easement was clear to Gully by November, 1982 (or, at the latest, by February, 1983; *see supra* note 4 and accompanying text). Although a mere announcement of condemnation does not amount to a lawful taking (*see supra* note 12), the an-

nouncement should have put Gully on notice. We are therefore somewhat skeptical of her right to continue to rely after that date. It is not apparent from the record, however, which damages were already sustained by November, 1982, and which did not accrue until thereafter. In any event, Bell has not raised this issue.

**20.** Bell's interest in this particular characterization is undoubtedly related to the fact that the cases it cites as evidence for the impermissibility of "double damages" are pure condemnation cases. *See, e.g., Pieratt*, 175 S.W.2d at 245: "damages in condemnation proceedings are limited to damages to property." As noted, however, these so-called "property" damages may also include such things as lost profits and damage to business. *See id.* at 246.

ment with Gully, Bell has, despite its condemnation power, consented in effect to suit for breach of that agreement. *Cf. State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 735–36 (1941) (involving the State of Texas' amenability to suit for contract damages despite Texas' procession under its eminent domain power). Although we have located no Texas cases where separate contract damages were awarded (or even at issue) in an eminent domain proceeding, there is no reason to believe that they would be disfavored.[21] It is consistent with the law of Texas, therefore, to award separate damages growing out of a breach of contract, as courts in Arizona and Florida have already done. *See, e.g., City of North Miami v. Florida East Coast Railway Co.*, 277 So.2d 62 (Fla.App.1973); *State ex rel. Herman v. Schaffer*, 110 Ariz. 91, 515 P.2d 593 (1973) (en banc).

## IV. CONCLUSION.

Bell did not lawfully condemn Gully's property until March, 1984. Until then, Bell was not only a trespasser, but also in breach of an easement deed between it and Gully, a deed upon which Gully continued to rely. The judgment of the district court is therefore AFFIRMED.

---

**21.** On the contrary, the overarching principle in Texas, expressed perhaps most succinctly in *Glade,* is that "the law should not ... preclude [landowners] from recovery ... of all damages to which they may be entitled...." 295 S.W.2d at 646.